Ignatius RUSSELL et al., Plaintiffs-Appellants,

v.

Virgil HODGES, as Director of the Mt. Morris Community Based Center, a Division of the Narcotic Addiction Control Commission, State of New York, et al., Defendants-Appellees.

No. 136, Docket 71-2176.

United States Court of Appeals, Second Circuit.

Argued Nov. 6, 1972.

Decided Dec. 6, 1972.

tion for Legal Services, Inc., Edward F. Green, Theodore Wagner, New York City, Oscar G. Chase, Brooklyn, N. Y., Richard Huffman, and Douglas J. Kramer, New York City, of counsel), for plaintiffs-appellants.

Joel Lewittes, New York City (Louis J. Lefkowitz, Atty. Gen. of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., and Irving L. Rollins, Asst. Atty. Gen., New York City, of counsel), for defendants-appellees Virgil Hodges, Charles D. King and William J. Murray.

Leonard Koerner, New York City (J. Lee Rankin, Corp. Counsel, and Stanley Buchsbaum, New York City, of counsel), for defendant-appellee Murphy.

Helen R. Cassidy, Brooklyn, N. Y. (John G. De Roos, Brooklyn, N. Y., of counsel), for defendant-appellee William J. Ronan, as Chairman and Chief Executive Officer of the New York City Transit Authority.

Before FRIENDLY, Chief Judge, and MANSFIELD and TIMBERS, Circuit Judges.

FRIENDLY, Chief Judge:

Plaintiffs in this civil rights action under 42 U.S.C. § 1983 are four former state or city employees who claim that their dismissals were unconstitutional because they were not first given "a hearing upon stated charges." Their complaint, filed in the District Court for the Southern District of New York, made the following allegations of fact:

(1) Plaintiff Russell, a veteran of the United States Army who enlisted on April 19, 1954 and was discharged on October 25, 1957, was employed as a "cleaner," a position in the labor class of the New York State Civil Service, by the State Narcotic Addiction Control Commission for two years and four months. His employment was terminated without any statement of reasons or a hearing.[1]

Dennis R. Yeager (Robert P. Roberts, Marttie L. Thompson, Community Ac-

---

1. Russell was notified on April 17, by defendant Hodges that he had the option of transferring to another section, resigning, or being fired, and that he should meet with Hodges and inform the latter of his decision on April 20. The meeting did not occur; the complaint does not say why.

(2) Plaintiff Fletcher, who was in the United States military service from August, 1966 to August, 1968, was employed as a provisional narcotics correction officer by the Narcotic Addiction Control Commission on May 18, 1970. On July 17, 1970, he received a statement of charges against him[2] and a notice that he was being terminated. His requests for hearings before the Commission and the State Department of Civil Service were denied.

(3) Plaintiff Gonzalez was hired as a provisional hostler by the New York City Police Department on May 8, 1967, was laid off between July 17 and November 20, 1967, but then worked continuously until October 14, 1970, when his employment was orally terminated, without a statement of reasons or a hearing.

(4) Plaintiff Walsh became a trainee of the New York City Transit Police Academy, a division of the New York City Transit Authority, in May, 1969. On September 11, 1970, two weeks before he was due to complete his training program, he was injured in a class demonstration of a police tactic. After medical examinations he was orally notified that his employment would be terminated, which it was on October 23, 1970.[3]

The availability of a hearing upon stated charges prior to dismissal of government employees in New York is governed by section 75(1) of the New York Civil Service Law, McKinney's Consol. Laws 7, which provides as follows:

Removal and other disciplinary action. A person described in paragraph (a), or paragraph (b), or paragraph (c), or paragraph (d) of this subdivision shall not be removed or otherwise subjected to any disciplinary penalty provided in this section except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section.

(a) A person holding a position by permanent appointment in the competitive class of the classified civil service, or

(b) a person holding a position by permanent appointment or employment in the classified service of the state or in the several cities, counties, towns, or villages thereof, or in any other political or civil division of the state or of a municipality, or in the public school service, or in any public or special district, or in the service of any authority, commission or board, or in any other branch of public service, who is an honorably discharged member of the armed forces of the United States having served therein as such member in time of war as defined in section eighty-five of this chapter, or who is an exempt volunteer fireman as defined in the general municipal law, except when a person described in this paragraph holds the position of private secretary, cashier or deputy of any official or department, or

(c) an employee in the state service holding a position in the non-competitive class other than a position designated in the rules of the state civil service commission as confidential or requiring the performance of functions influencing policy, who since his

---

2. The opinion of the district court states that these charges included sleeping on duty, absence from his post without authorization, and wearing improper attire. While this is not included in the record transmitted to us, we shall assume it to be true.

3. At the time the complaint was filed, his case was under review by the Medical and Physical Examining Bureau of the New York City Department of Personnel; we have not been informed as to the disposi-

tion, if any, of this review. The opinion of the district court states that Walsh also alleged that after his dismissal he was reexamined and told that he could remain in the training program if he underwent knee surgery; that he did this; but that reinstatement was refused because on October 31, 1970, his twenty-first birthday, he passed the age of eligibility. While these facts are not included in the record transmitted to us, we shall assume them to be true.

last entry into state service has completed at least five years of continuous service in the non-competitive class in a position or positions not so designated in the rules as confidential or requiring the performance of functions influencing policy, or

(d) an employee in the service of the City of New York holding a position as Homemaker or Home Aide in the non-competitive class, who since his last entry into city service has completed at least three years of continuous service in such position in the non-competitive class.

■ Plaintiffs do not contend that they come within any of the quoted provisions. Their complaint is two-fold. They urge that the statute violates the due process clause of the Fourteenth Amendment by not providing them with a hearing upon stated charges before termination of their employment, and that it violates the equal protection clause of that amendment by failing to provide them with the hearing upon stated charges accorded to the employees therein described. Plaintiffs sought an injunction requiring that they be reinstated pending such a hearing and restraining defendants from dismissing any employees without a similar hearing, and requested the convening of a three-judge court to consider their claims that § 75(1) is unconstitutional. Judge Bonsal dismissed the complaint for failure to state a substantial constitutional question, thereby mooting the request for a three-judge court. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933). This appeal followed.

## I. *Due Process*

■ Since the decision of the district court, the Supreme Court has delivered two opinions seeking to clarify what interests of government employees constitute "liberty" and "property" within the meaning of the Fourteenth Amendment so as to require such procedural due process protections as a statement of charges and an opportunity for a hearing prior to the termination of their employment. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). As we understand these opinions, an employee seeking to show, absent any claim of First Amendment violations, that his termination was a deprivation of "liberty" must demonstrate that the government had made a charge "that might seriously damage his standing and associations in his community" or had imposed "a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." 408 U.S. at 573, 92 S.Ct. at 2707. The Court made clear that by the latter phrase it meant something more than the disadvantage inevitably entailed when a person "simply is not rehired in one job but remains as free as before to seek another." 408 U.S. at 575, 92 S.Ct. at 2708. "Mere proof, for example, that his record of nonretention in one job, taken alone, might make him somewhat less attractive to some other employers would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of 'liberty.'" 408 U.S. at 574 n. 13, 92 S.Ct. at 2708. "Property" interests, the Court held, include not merely contractual or statutory rights to continued employment but rights acquired under a *"de facto* tenure program," resulting from "the existence of rules and understandings, promulgated and fostered by state officials, that may justify his legitimate claim of entitlement to continued employment," 408 U.S. at 600, 602, 92 S.Ct. at 2700. But the Court explained that a mere "unilateral expectation" of continued employment was not sufficient "property" to trigger due process guarantees. 408 U.S. at 577, 603, 92 S.Ct. at 2701.

■ It is plain that none of the plaintiffs had any "property" interest in continued employment. They clearly had no contractual or statutory claim, and none made any allegations sufficient to demonstrate a plausible claim to *de*

*facto* tenure. Gonzalez and Fletcher were provisional employees who, by the very terms of New York Civil Service Law § 65(1), hold their positions only until a permanent appointment can be made after competitive examination.[4] Walsh was a trainee who would have become a probationary employee had he completed his training program; his employment was specifically conditioned on his being able to pass the physical examination at the end of the training period. Russell, though a "permanent" appointee, was entitled to none of the protections of tenure afforded by statute and alleged nothing to show *de facto* tenure.

 It is equally plain that Russell, Gonzalez and Walsh did not bring themselves within the criteria established by the Court for showing a deprivation of "liberty." Russell and Gonzalez were told nothing; for all that appears their terminations may have been due simply to reduction in force. Walsh's termination was for an injury incurred in the course of training. While his dismissal may seem harsh, especially if the claim noted in fn. 3 is substantiated, termination for a knee injury obviously would not "seriously damage his standing and associations in his community," and would not foreclose his freedom to take advantage of less arduous employment opportunities, or even equally arduous ones if the prospective employer was satisfied with his physical fitness. While Fletcher's case, see fn. 2, may be a shade closer, we believe the Court was thinking of something considerably graver than a charge of failure to perform a particular job, lying within the employee's power to correct; the cases cited as illustrations involved charges of chronic alcoholism or association with subversive organizations. Indeed, a general rule that informing an employee of job-related reasons for termination created a right to a hearing, in circumstances where there was no constitutional requirement for the state to do anything, would be self-defeating; the state would merely opt to give no reasons and the employee would lose the benefit of knowing what might profit him in the future.

## II. *Equal Protection*

Appellants also contend that New York violated the equal protection clause of the Fourteenth Amendment by according a hearing upon stated charges to the categories of employees described in § 75(1) but not to them.

It is useful to explain, by way of background, the general nature of New York's statutory scheme. The unclassified civil service, N.Y. Civil Service Law, § 35, comprises, broadly speaking, persons elected by the people or the legislature; officers and employees of the legislature; offices filled by appointment by the governor, and other high officials; members and employees of boards of elections; and teachers and other educational personnel.[5] The classified service, § 40 comprises all other employees. Passing over the exempt class, § 41, which is not here relevant, these are divided into the competitive class, § 44, including "all positions for which it is practicable to determine the merit and fitness of applicants by competitive examination;" the non-competitive class, § 42, including "all positions that are not in the exempt class or the

---

4. Although provisional appointments are limited to a duration of nine months, see N.Y. Civil Service Law § 65(2), and Gonzalez was continued in his provisional employment for nearly three years, this fact does not provide any basis for a claim of *de facto* tenure. Section 65(4) indicates that renewal of such an appointment in no way alters its provisional status, and New York law is clear that a provisional appointment, unlike a probationary appointment, can never ripen into permanent employment. Koso v. Greene, 260 N.Y. 491, 184 N.E. 65 (1933).

5. Provisions for tenure for teachers are set out in the New York Education Law; McKinney's Consol.Laws, c. 16. See § 3020-a (providing for notice of charges and a hearing prior to dismissal of teachers holding tenure); § 3031 (providing for a written statement of reasons prior to decisions not to grant tenure).

labor class and for which it is found . . . to be not practicable to ascertain the merit and fitness of applicants by competitive examination;" and the labor class, § 43, comprising "all unskilled laborers in the service of the state and each of its civil divisions." The Civil Service Law also provides for temporary appointments when there is an urgent need, § 64; and for provisional appointments in the competitive class pending competitive examinations, § 65; and requires appointees in the competitive class to serve a probationary term, § 63.[6]

■ The appellants' first attack is on the preference accorded by § 75(1)(b) to honorably discharged members of the armed forces of the United States who had served therein in time of war. Appellants do not seriously urge that the Legislature would have violated the equal protection clause by conferring such a preference on all veterans. The desire to compensate in some measure for the disruption of a way of life and often of previous employment occasioned by service in the armed forces and to express gratitude for such service is a rational basis for giving veterans a larger measure of job security, both substantive and procedural—as § 14 of the Federal Veterans' Preference Act of 1944, 58 Stat. 387, 390, 5 U.S.C. §§ 7512, 7701, does. *Cf.* Mitchell v. Cohen, 333 U.S. 411, 418–420, 68 S.Ct. 518, 92 L.Ed. 774 (1948); see also Hilton v. Sullivan, 334 U.S. 323, 68 S.Ct. 1020, 92 L.Ed. 1416 (1948); Elder v. Brannan, 341 U.S. 277, 71 S.Ct. 685, 95 L.Ed. 939 (1951). While none of these decisions involved a constitutional challenge to the Veterans' Preference Act, the Court's language leaves little doubt concerning the fate such a challenge would have met. The constitutionality of the federal statute was sustained, against an attack by

non-veterans, in White v. Gates, 102 U.S.App.D.C. 346, 253 F.2d 868, cert. denied, 356 U.S. 973, 78 S.Ct. 1136, 2 L.Ed.2d 1147 (1958), the court of appeals holding that the challenge was so insubstantial as to have warranted the district judge in refusing to convene a three-judge court under 28 U.S.C. § 2282.

Appellants' argument is rather that New York denied equal protection when it limited the benefits of § 75(1)(b) to veterans who had served in time of war, thereby excluding Russell, a peacetime veteran who otherwise would have been entitled to a hearing under this provision. While the disruption factor may be equally great with respect to persons who have served in the armed forces in peacetime, the desire to confer a reward is not of the same order of magnitude, and this alone is a sufficient basis for conferring so modest an added benefit. See Bateman v. Marsh, 188 Misc. 189, 197, 64 N.Y.S.2d 678, 684–685 (Sup.Ct. N.Y.Co.), aff'd mem., 271 App.Div. 813, 66 N.Y.S.2d 411 (1st Dep't 1946), aff'd mem., 296 N.Y. 849, 72 N.E.2d 30 (1947). It can, of course, be argued that if a distinction is to be made among veterans, a better one would be between those who were in combat duty and all others, whether the latter served in wartime or during peace. But apart from the fact that the legislature could rationally have drawn the line at those who risked their lives in combat or might have been called upon to do so, the task of determining just what constitutes subjection to combat could well have been deemed too difficult for practical administration and the legislature could properly opt for the much easier task of determining dates of service.

■ Appellants' challenge to the provision of § 75(1)(c), which assimilates persons with five years of continu-

---

6. Gonzalez and Fletcher were provisional employees in the competitive class and apparently claim that § 75(1)(a)'s limitation of procedural protections upon discharge to permanent appointees in that class deprives them of equal protection of the laws. The claim that the appointment of provisional and probationary employees not entitled to the protection of tenure is irrational is too frivolous to warrant discussion.

ous service in the non-competitive class to those in the competitive class, requires little discussion. It would suffice that, since none of the plaintiffs has served five years or been employed in the non-competitive class, they may lack standing to make the point. See Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 165–171, 92 S.Ct 1965, 32 L.Ed.2d 627 (1972). On the merits, however, the passage of § 75(1)(c) in 1965 reflected a laudable decision of the legislature that employees in the non-competitive class should not be forever barred from the protection afforded persons in the competitive class merely because it was impracticable to devise an examination for their positions. The requirement of five years of service was intended to provide a probationary period to evaluate the performance of these employees, a function served for competitive class employees in part by the required, but somewhat shorter probationary period of § 63 and in part by the competitive examination. The choice of what would constitute a reasonable period of service to work as a substitute for the combination of an examination and a probationary period was for the legislature to determine.

■ Once this is settled, the challenge to § 75(1)(d), which fixes a three year rather than a five year period for entitlement to a hearing for "an employee in the service of the City of New York holding a position as Homemaker or Home Aide in the non-competitive class" is easily met. This provision was added in 1970, Laws of N.Y., ch. 942, as a result of a home-rule request by the City pursuant to Article IX, § 2(b)(2), of the New York Constitution. The City sought this to reflect "an essential provision set forth in a collective bargaining agreement, agreed to by and between the City and the Union representing employees in the above titles, whereby the City agreed to support legislation conferring the benefit upon such employees" and "in the interest of furthering and enhancing the collective bar-

gaining process." N.Y. State Legislative Annual, 1970, at 65–66. Standing to mount an equal protection challenge to this provision would be limited to employees in the non-competitive class with more than three but less than five years of non-competitive service, or perhaps even to Homemakers and Home Aides outside New York City with more than three but less than five years of non-competitive service. Appellants are in neither category.

■ Finally, appellants challenge the scheme whereby an unskilled laborer can never become eligible for the benefits accorded by § 75(1). Only Russell could possibly have standing to raise this, and, even as to him, we need not decide the question appellants seek to urge. Even if appellants' point were well taken, which we rather doubt in light of what seems to be the developing law as to a less rigorous standard of review when the thrust of a statute is the extension of new benefits above and beyond the requirements of the Constitution, cf, Katzenbach v. Morgan, 384 U.S. 641, 657, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966); McDonald v. Board of Election Comm'rs, 394 U.S. 802, 809–811, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969); Schilb v. Kuebel, 404 U.S. 357, 366, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971), New York was surely not bound to establish a lesser period to entitle unskilled laborers to a hearing than the five years it had permissibly fixed for the non-competitive service. Russell has served less than half that long.

---

There remains the standard contention that even if all the foregoing be true, it is not so clearly true that Judge Bonsal should have decided the issues himself rather than summoning two other judges for reassurance, and that we should therefore reverse and the writer should designate two other judges—perhaps two of ourselves—to sit with him and hear the case again. We have previously indicated our lack of enthusiasm

for such an argument. Green v. Board of Elections, 380 F.2d 445, 448–449 (2 Cir., 1967); Astro Cinema Corp. v. Mackell, 422 F.2d 293, 298 (2 Cir., 1970).

Affirmed.