Jose **RIOS**, et al., Individually and on behalf of all others similarly situated, Plaintiffs-Appellants,

v.

Dr. Everett G. **DILLMAN**, etc., et al., etc., Defendants-Appellees.

No. 74–1136

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Aug. 23, 1974.

Bart Cox, Am. Civ. Liberties Union, El Paso, Tex., for plaintiffs-appellants.

Travis White, City Atty., John C. Ross, Jr., Wade Adkins, Michael F. Ainsa, Asst. City Attys., El Paso, Tex., for defendants-appellees.

Before WISDOM, GOLDBERG and GEE, Circuit Judges.

* Rule 18, 5th Cir.; *see* Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir. 1970, 431 F.2d 409, Part I.

GOLDBERG, Circuit Judge:

■■ This case comes to us as an appeal from an order dismissing plaintiffs' complaint for failure to state a claim upon which relief can be granted, Fed.R.Civ.Pro. 12(b)(6).[1] The focus of our review is simple. In testing the sufficiency of a complaint against a 12(b)(6) motion to dismiss, the trial court must utilize the now familiar litmus from Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80.

> [O]ver and over and over again—but apparently not often enough—this Court has stated, explained, reiterated, stressed, rephrased, and emphasized one simple, long-established, well-publicized rule of Federal practice: a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would not be entitled to recover under any state of facts which could be proved in support of his claim.

Cook & Nichol, Inc. v. Plimsoll Club, 5 Cir. 1971, 451 F.2d 505, 506 (Brown, C. J.).[2] On numerous occasions we have warned of the dangers inherent in precipitate, final disposition of a case on the basis of barebones pleadings. *See*

Cook & Nichol, Inc. v. Plimsoll Club, *supra*, 451 F.2d at 506–507. By now it should be clear even to the most astigmatic that we view motions to dismiss for failure to state a claim with disfavor, and that in our opinion they should rarely be granted. *See* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1357 at 598 (1969).

This does not mean, however, that motions to dismiss for failure to state a claim should never be granted. *See, e. g.*, Robles v. El Paso Community Action Agency, 5 Cir. 1972, 456 F.2d 189; Jaeger v. Freeman, 5 Cir. 1969, 410 F.2d 528. "When used with care, there is a time and a place for 12(b) motions to dismiss." Cook & Nichol, Inc. v. Plimsoll Club, *supra*, 451 F.2d at 507 n. 8. In our opinion the case at bar represented the proper time and place for the use of Rule 12(b)(6). Finding no error in that disposition of the case, we affirm.

■ Like many other municipalities, El Paso, Texas has elected to grant preferential treatment to veterans seeking employment within the city's civil service. Under Article VIII, Section 3 and Article VI, Section 7 of the Civil Service Provisions of the El Paso Municipal Charter,[3] anyone qualifying as a "veter-

---

1. The first time the case was filed, the district court, after allowing one amendment of the complaint, granted defendants' motion to dismiss for failure to allege facts showing that the named plaintiffs were personally affected by the challenged provisions of the El Paso City Charter. This Court affirmed, intimating no view as to the merits of the complaint. Rios v. Washington, 5 Cir. 1973, 480 F.2d 543. On October 9, 1973, plaintiffs filed a new original complaint, pleading in great detail the manner in which each class representative is personally affected by the ordinance in question. The dismissal of this subsequent complaint pursuant to Rule 12(b)(6) gives rise to the instant appeal.

2. *Accord,* Battle v. Liberty National Life Insurance Co., 5 Cir. 1974, 493 F.2d 39, 44; Jennings v. Patterson, 5 Cir. 1972, 460 F.2d 1021, 1022; Stefanski v. Mainway Budget Plan, Inc., 5 Cir. 1972, 456 F.2d 211, 212. *See generally* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1357 (1969).

3.

ARTICLE VIII SECTION 3
SPECIAL CREDIT FOR WAR
VETERANS

"Veterans of any of the wars of the United States who have obtained a passing rate at an examination, and who present an honorable discharge from military service, shall have their ratings in said examination advanced five points.

"The term 'veteran' *as used in this Amendment* shall be construed to mean any person, who rendered actual field duty in the army, navy, marine, or air corps for a period of not less than thirty days during time of war, if such service included services overseas, or for a period of not less than three months in time of war, if such service did not include service overseas. Service in the Student Army Training Corps or in the Reserve Officers' Training Corps shall not be considered field duty within the meaning of this rule. Field duty shall not include service while

an" and attaining a passing score on a civil service examination automatically receives an additional five points. The named plaintiffs, two policemen and two firemen, none of whom are "veterans" within the meaning of the ordinance, challenge the constitutionality of the veterans preference points on behalf of themselves and all other municipal employees who fall outside the statutory definition. Conceding the validity of veterans "credits" for original appointment in the civil service, they nevertheless insist that insofar as the ordinance adds preference points to veterans' promotional examinations it violates the Fourteenth Amendment's guarantee of equal protection of the laws. We do not agree.

■ The basic principles governing application of the Equal Protection Clause need no lengthy explication. The Fourteenth Amendment

does not deny to States the power to treat different classes of persons in different ways. [citations omitted] The Equal Protection Clause of that amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." [citation omitted]

Reed v. Reed, 1971, 404 U.S. 71, 75–76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225, 229. To pass constitutional muster a legislative classification must bear some rational relationship to legitimate state purposes or governmental interests. United States Department of Agriculture v. Moreno, 1973, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782, 787; San Antonio Independent School District v. Rodriguez, 1973, 411 U.S. 1, 40, 93 S.Ct. 1278, 36 L.Ed.2d 16, 47; Weber v. Aetna Casualty & Surety Co., 1972, 406 U.S. 164, 172, 92 S.Ct. 1400, 31 L.Ed.2d 768, 777.[4]

on furlough. Field duty shall not include office, laboratory or shop service performed under other than field conditions.

"Veterans who fully qualify as above stated, and who are suffering from disability traceable directly or indirectly to war service shall have their examination rating advanced another five points, provided, however, that the present fact of such disability is directly or indirectly traceable to war services and that such disability is certified to by an army or navy surgeon or other competent Governmental medical authority.

"Limitations as to age in respect of any positions under the classified service shall not apply to veterans as such term is defined herein; provided, however, that the exemption from age limits herein granted shall not apply to position in the fire or police departments of the City of El Paso, nor to any position to which any retirement plan now in existence or hereafter adopted by the City of El Paso shall apply.

"Nothing in this provision shall be construed to authorize or direct the placing of the name of any person on any eligible list who does not meet the physical standards set up by the commission for the position for which said eligible list has been created."

ARTICLE VI SECTION 7
RULES APPLYING TO ORIGINAL EXAMINATIONS TO APPLY TO PROMOTIONAL EXAMINATIONS.

"Eligible lists resulting from examinations held under the foregoing sections shall in all respects have the same standing and be subject to the same restrictions as eligible lists resulting from original entrance examinations, except that in case two or more persons take a promotional examination and receive the same rating, the person who has greater seniority in the position qualifying him for promotion shall be placed higher on the resulting list. No person shall be certified from a promotional eligible list who has been permanently separated from the service."

4. Recently a number of courts have faced equal protection attacks on veterans' preference legislation based on the argument that "the challenged state action must be subjected to the searching judicial scrutiny reserved for laws that create suspect classifications or impinge upon constitutionally protected rights." San Antonio Independent School District v. Rodriguez, 1973, 411 U.S. 1, 40,

Although the portions of the El Paso charter cited to us by the parties contain no explicit statement of purpose, the statutory objectives are hardly mysterious given the long-standing, widespread existence of veterans' preference legislation at all levels of government. Indeed, "it is apparent to anyone who has lived through periods of war that contrived explanations are not necessary." August v. Bronstein, *supra* note 4, 369 F.Supp. at 193. Historically veterans' preference laws have been directed to three principal objectives: (1) to recognize that the experience, discipline, and loyalty that veterans gain in military service are conducive to the better performance of public duties; (2) to encourage citizens to serve their country in time of war and to reward those who, either involuntarily or through enlistment, did so; and (3) to aid in the rehabilitation and location of the veteran whose normal life style has been disrupted by military service. Russell v. Hodges, 2 Cir. 1972, 470 F.2d 212, 218; White v. Gates, 102 U.S.App.D.C. 346, 253 F.2d 868, cert. denied, 1958, 356 U. S. 973, 2 L.Ed.2d 1147; Feinerman v. Jones, *supra* note 4, 356 F.Supp. at 259; Koelfgen v. Jackson, *supra* note 4, 355 F.Supp. at 253; Stevens v. Campbell, *supra* note 4, 332 F.Supp. at 106.

Appellants do not really challenge the propriety of any of these objectives, and in any event the decisions cited above— as well as the plethora of cases on which they rely—amply demonstrate that the legitimacy of the governmental interest in veterans preference legislation is beyond serious judicial dispute. Appellants' dissatisfaction with the El Paso scheme seems to be, rather, that the preference accorded to veterans is simply too great. To some extent appellants appear to be simply questioning the desirability of what is in effect a permanent promotional advantage for veterans in the civil service. We remind them that given a legitimate legislative end, this Court does not ordinarily sit to evaluate the *wisdom* of particular statutory means; that task is assigned to others in our system of government.

Appellants also challenge the placement of the line dividing those civil servants who are eligible for the promotional preference points from those who are ineligible. Understandably enough, the operative word in the El Paso ordinance is "veteran." It can hardly be debated that insofar as the statutory classification has the effect of limiting the preference to those who are in fact veterans, it makes no irrational, impermissible distinctions. Russell v. Hodges, *supra*, 470 F.2d at 218.[5] The El Paso ordinance, however, goes several steps further, for it is perfectly explicit that not all those who have served in the military qualify as "veterans." In the first place, one must be a veteran of a war fought by the United States and must have received an honorable discharge from the service. Beyond that, one must have "rendered actual field duty"

93 S.Ct. 1278, 1301, 36 L.Ed.2d 16, 47. At least two refused to find any fundamental right "to be fairly considered for public employment." Feinerman v. Jones, M.D.Pa. 1973, 356 F.Supp. 252 (three-judge court); Koelfgen v. Jackson, D.Minn.1972, 355 F. Supp. 243, aff'd mem., 1973, 410 U.S. 976, 93 S.Ct. 1502, 36 L.Ed.2d 173. Another concluded that a durational residency requirement attached to veterans' preference legislation infringed the fundamental right of interstate travel and served no compelling state interest. Carter v. Gallagher, D. Minn.1971, 337 F.Supp. 626 (three-judge court). *Contra,* August v. Bronstein, S.D. N.Y.1974, 369 F.Supp. 190 (three-judge court; limited residence requirement does not infringe the right to travel). *See also* Stevens v. Campbell, D.Mass.1971, 332 F. Supp. 102 (three-judge court; residency requirement not rationally related to permissible goal of state).

Plaintiffs-appellants have made no attempt to invoke this "searching judicial scrutiny" in the case *sub judice.* We therefore need not reach the question whether under any conceivable set of facts plaintiffs could establish that the El Paso veterans' preference ordinance unconstitutionally classifies on the basis of "suspect" criteria or infringes a fundamental right.

5. *Cf.* Johnson v. Robison, 1974, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389; Feinerman v. Jones, M.D.Pa.1973, 356 F.Supp. 252, 259–260.

for a certain period of time, which varies depending on whether the service included duty overseas. As we have already indicated, appellants do not quarrel with the differential treatment accorded military alumni on examinations for original appointment in the civil service. Thus, the thrust of their equal protection argument is that the criteria used to identify the recipients of the promotional preference distinguish among those with prior military service in a manner which is unreasonable, arbitrary, and capricious given the size of the advantage granted.[6]

We find ourselves unable to accept appellants' position. We do not necessarily disagree with the proposition implicit in appellants' argument—that a classification may be rational and reasonable at one level of preferential treatment but irrational and arbitrary when the advantage granted is much stronger. But this is not such a case. The promotional preference provided under the El Paso scheme is certainly quite extraordinary, *see* Koelfgen v. Jackson, *supra*, 355 F.

Supp. at 253, and we recognize that it may be unfair to withhold that preference from those with prior military service who for some reason do not meet all the qualifications outlined in the statutory definition of a veteran. Nonetheless, we are unwilling to conclude that the decision of El Paso to draw the qualifying line where it did is arbitrary, capricious, or unreasonable.

■■ Certainly El Paso could reasonably conclude that those honorably discharged veterans who performed field duty for a particular period of time during time of war are the ones most likely to have gained whatever experience, discipline, and loyalty are determined to be conducive to better performance as a public employee.[7] The decision to grant those veterans the promotional preference as a means of encouraging military service in times of war and rewarding such service is not arbitrary or capricious. Nor is it unreasonable to determine that those veterans are the most worthy or the most in need of assistance in rehabilitation and employment place-

6. Although the original complaint in this case is not totally clear, it does not appear that any of the named plaintiffs are themselves within the group of those having military service but excluded from the definition of "veteran." Ordinarily this might pose problems of standing and ability of the named representatives to represent the class pleaded; however, we need not consider these problems in determining whether, for purposes of defendants' motion to dismiss for failure to state a claim, plaintiffs could prove any set of facts that would entitle them, or the class they purport to represent, to the relief sought.

7. In Thompson v. Gallagher, 5 Cir. 1973, 489 F.2d 443, this Court held that a city ordinance barring veterans with other than honorable discharges from municipal employment violated the Equal Protection Clause. We concluded that the statutory classification did not rationally relate to the stated municipal interest—maintaining the quality of the city work force—because the criterion used, honorable discharge, did not reasonably differentiate among veterans and imposed no test of qualification on nonveterans.

We do not think *Thompson* compels reversal in the case at bar. A statute that bars

*all* employment has a substantially different effect from one that simply grants an advantage to some otherwise qualified for employment, and the honorable discharge requirement is significantly less reasonable for ·one than for the other. Obviously a person may be discharged other than honorably for a variety of reasons, not all of which necessarily reflect on that person's ability, experience, loyalty, need for rehabilitation, or suitability for reward for serving the nation in time of war. It might be more reasonable and more fair to draw the line at some other point, for example, limiting the preference to those with other than a dishonorable discharge,· *see* the Emergency Employment Act of 1971, P.L. 92–54, 85 Stat. 146. This does not mean that granting the preference to those with honorable discharges only is unreasonable. As we have noted, many other courts have upheld veterans' preference statutes that limit benefits to those with honorable discharges. *E. g.*, Russell v. Hodges, *supra*; White v. Gates, *supra* (upholding the Veterans' Preference Act, now 5 U.S.C. § 2108 et seq.) ; Koelfgen v. Jackson, *supra*.

ment to compensate for disruption caused by military service. Finally, we cannot say that the promotional preference, great though it may be, is so much greater than that granted for original appointment that the same criteria are unreasonably used to apportion both. In that regard we agree with the sentiments of the lower court in *Koelfgen, supra*, 355 F.Supp. at 254:

the differences which exist between granting veterans an initial preference and granting them a five point promotional preference are primarily differences in degree rather than principle. [citation omitted] For this Court to draw a constitutional line between initial and promotional preferences would require a kind of hair splitting that courts are ill equipped to handle.

Buttressing our conclusion that appellants' argument must fail is the analogy supplied by Koelfgen v. Jackson, *supra*, which involved a challenge to the Minnesota veterans' preference statute. Unlike most veterans' preference laws, but like the El Paso ordinance, the Minnesota statute granted a promotional preference to veterans. As under the El Paso ordinance, veterans who otherwise passed a civil service promotional examina-

tion could receive an additional five points on their scores. And much like the El Paso ordinance, the Minnesota statute limited this preference to veterans who had served on active duty for other than training purposes during a war or armed expedition by the United States and who had received an honorable discharge. The three-judge court that heard the challenge to the statute found no equal protection infirmity in the promotional preference. *Accord,* August v. Bronstein, *supra* note 4, 369 F.Supp. at 193 (2½-point promotional preference). The Supreme Court affirmed the decision of the lower court without opinion, thus stamping its imprimatur of approval on the result, if not on all the reasoning, below.

We read no inexorable command in the Supreme Court's affirmance, for *Koelfgen* and the case at bar are not equarely on all fours with each other.[8] The Minnesota statute, like the New York statute considered in August v. Bronstein, *supra*, allowed the promotional points to be used only once, whereas the El Paso ordinance appears to grant the preference on every promotional exam which the veteran otherwise passes. This factual distinction does not, in our opinion, lessen the persuasive force

---

8. We recognize that the exact precedential weight of a Supreme Court summary affirmance without opinion is a matter of some debate. *Compare* Dillenburg v. Kramer, 9 Cir. 1972, 469 F.2d 1222, 1225 ("very little precedential significance") *with* Jordan v. Weaver, 7 Cir. 1973, 472 F.2d 985, 989 ("a summary affirmance is a decision on the merits having precedential value"), rev'd sub nom., Edelman v. Jordan, 1974, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662. Writing for the Supreme Court in *Edelman, supra,* 415 U.S. at 669, 94 S.Ct. at 1359, 39 L.Ed.2d at 677, Justice Rehnquist said,

[T]hese . . . summary affirmances obviously are of precedential value . . . . Equally obviously they are not of the same precedential value as would be an opinion of this Court treating the question on its merits. Since we deal with a constitutional question, we are less con-

strained by the principle of stare decisis than we are in other areas of the law.

Of course, this Court, as an intermediate appellate court, does not enjoy the same flexibility with regard to the principle of stare decisis in Supreme Court constitutional decisions as the Supreme Court itself. On the other hand, the case *sub judice* well illustrates the difficulty of assessing the precise precedential value of a summary affirmance. *Koelfgen* and the case at bar are factually distinguishable, but the absence of an opinion by the Supreme Court in *Koelfgen* leaves us with only our own reasoned speculation regarding the legal importance of the differences. We prefer to conclude that because of the factual distinctions, the Supreme Court action in *Koelfgen* stands as highly persuasive—if not controlling—authority, which we are not free simply to disregard.

of *Koelfgen* on the case *sub judice*. As with the difference between an initial preference and a promotional preference, the difference between a one-time promotional preference and a recurring preference is primarily one of degree, review of which would require instruments calibrated far beyond those available to us.

We emphasize that by our decision we intimate no views regarding the wisdom of the El Paso veterans' preference plan. Obviously the city could—and perhaps should—have rationally decided on a smaller preference or a broader definition of eligibility. That does not make the decision to do otherwise irrational or arbitrary. The Equal Protection Clause does not automatically condemn statutory programs that are not as finely tuned as they might be. We conclude only that appellants could not in our judgment have presented any set of facts that would compel a negative answer to "the crucial question . . . whether there is an appropriate governmental interest suitably furthered by the differential treatment." Police Department of Chicago v. Mosley, 1972, 408 U.S. 92, 95, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212, 216.

The Equal Protection Clause is not an automatic leveler, nor does it reduce legislative bodies to classificatory impotence. It allows statutory distinctions; and so long as a classification does not turn on suspect criteria, it requires only a rational justification for the decision to classify. The list of suspect classifications is not plethoric, and thus far does not include veterans. Therefore, our constitutional "thou shall not" is most limited: we may cross the Rubicon only to search out capriciousness and arbitrariness. Having determined that the classification here challenged is explicable in rational, reasonable terms, we conclude that the El Paso ordinance favoring veterans is not aberrational. There our inquiry ceases.

Affirmed.

* Rule 18, 5th Cir.; *see* Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5th Cir., 1970, 431 F.2d 409, Part I.