**William C. SPRINGSTON**

v.

**Wayne KING et al.**

**Civ. A. No. 71-C-125-H.**

United States District Court,
W. D. Virginia,
Harrisonburg Division,

Sept. 16, 1975.

David Ross Rosenfeld, Alexandria, Va., for plaintiff.

Phillip C. Stone, Harrisonburg, Va., for defendants.

## OPINION and ORDER

TURK, Chief Judge.

Plaintiff William Springston alleges in this suit that the Superintendent of the Harrisonburg City Schools, the six members of the Harrisonburg City School Board and the principal of Thomas Harrison Junior High School violated his constitutional rights in refusing to renew his contract as a guidance counselor at Thomas Harrison Junior High School.[1] Plaintiff's initial complaint was dismissed by this court on March 24, 1972 for failure to state a claim upon which relief could be granted and an appeal was taken. The Fourth Circuit vacated the judgment of dismissal and remanded the case for further proceedings in light of *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L. Ed.2d 548 (1972) which had been decided in the interim. Plaintiff thereafter filed an amended complaint which the defendants again moved to dismiss pursuant to *Fed.R.Civ.P.* 12(b)(6). The court took this motion under advisement and directed discovery to proceed. Following extensive discovery, defendants then filed a motion for summary judgment which, along with their motion to dismiss is now before the court.

Plaintiff was employed as a guidance counselor by the Harrisonburg City School Board from September, 1967 through June, 1971. On January 30, 1971, plaintiff received an evaluation from defendant Meyers, the principal of Thomas Harrison Junior High School, which indicated that some teachers had lost confidence in him because they felt he did not discuss student problems with them. This evaluation also praised plaintiff's efforts in working with students and parents but concluded that his effectiveness as a counselor had been hampered by teacher discontent and that some of the results of his efforts had been counter-productive. On February 26, 1971, plaintiff received a written memorandum from defendant Meyers which recommended that plaintiff not be rehired as a guidance counselor for various reasons which may be summarized as follows: (1) that many of his efforts were counter-productive; (2) that many teachers had lost confidence in his ability to counsel students objectively because he took the side of the stu-

1. This suit is filed pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343.

dents and failed to disclose student problems to teachers; (3) that confidentiality had become a problem in that insignificant problems had been allowed to grow out of proportion because teachers were not made aware of the problems; (4) that he did not keep teachers fully informed of matters concerning them; (5) that he sometimes revealed privileged information to persons not connected with school affairs; (6) that he was sometimes critical of teachers in conferences with parents; and (7) that some people felt that he "pumped" them for derogatory information about others. This memorandum also complimented plaintiff as a "dedicated guidance person" who had worked hard to develop a guidance program at the school and expressed defendant Meyer's belief that plaintiff would be effective in a teaching position.

Plaintiff thereafter requested an appearance before the School Board with an opportunity to examine and cross-examine the evidence relied upon by defendant Meyers in arriving at his negative evaluation and recommendation that he not be rehired as a guidance counselor. On March 16, 1971, plaintiff appeared before the School Board, but his request that he be given an opportunity to challenge more specific information regarding his evaluation was denied. On March 17, 1971, plaintiff was notified that the School Board had accepted the recommendation of the principal and superintendent that he not be employed as a guidance counselor at Thomas Harrison Junior High School but be offered a position as an industrial arts teacher or a D. E. teaching position, if available. This notice informed plaintiff that an appeal could be taken from this decision.

Plaintiff appealed to the School Board and again requested that he be allowed to examine the specific evidence against him. Plaintiff appeared before the School Board on July 6, 1971, but his request that he be confronted with the specific evidence supporting the decision not to renew his contract was again denied. Plaintiff did present witnesses and arguments on his own behalf at this hearing. On July 9, 1971, the School Board notified plaintiff that it had found no new evidence on which to alter its previous decision.

Plaintiff then filed this suit which by amended complaint alleges that the defendants' actions in failing to renew his contract as a guidance counselor violated his substantive, constitutionally guaranteed rights of freedom of speech, privacy, academic freedom, and due process of law. Plaintiff also alleges that the reasons given for not re-employing him as a guidance counselor and the opportunity afforded him to challenge these reasons constituted a denial of procedural due process of law.[2]

Plaintiff's procedural due process claim begins with a consideration of the companion cases of *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and *Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) in which the Supreme Court considered the issue of procedural due process in the context of state colleges' and universities' refusal to renew the contracts of non-tenured professors. As these cases make clear, the threshold question in such a case is whether the decision not to rehire a teacher implicates an individual's "property" or "liberty" interests which are protected by the Fourteenth Amendment. In the case at bar, plaintiff was a non-tenured, probationary employee. Thus, he does not here contend that a protected "property" interest was infringed by the defendants' actions in not renewing his contract as a guidance counselor. The procedural due process issue presented by this case is rather, whether the reasons given to plaintiff and the circumstances surrounding the nonrenewal of his contract so besmirched his professional reputation and

2. Plaintiff also alleges that he was denied equal protection of the laws, however there are no factual allegations to support such a claim.

standing in the community so as to implicate his "liberty" interest and thus require a hearing at which he could attempt to clear his name.

■ There is no dispute that plaintiff was a probationary employee whose contract as a guidance counselor was subject to non-renewal in the event his employers were not satisfied with his performance. There was no basis for plaintiff to expect that differences between himself and the school administration regarding his counseling philosophy or performance would be tolerated if they hindered the efficient operation of the school. Of the numerous reasons given to plaintiff for the refusal to renew his contract, most merely reflected a disagreement with his policy of confidentiality and allegiance to students over teachers and the perceived effect of this policy on the school. The only reasons which even arguably called into question his good name, reputation, honor or integrity were that he had on occasion revealed privileged information and that some people felt that he "pumped" them for derogatory information about others. Although when taken in isolation such charges could perhaps call into question plaintiff's good name, in the overall context of this case the court does not perceive these reasons as implicating plaintiff's "liberty" so as to require a full evidentiary hearing.

The memorandum which informed plaintiff that his contract as a guidance counselor would not be renewed basically questioned his methods and effectiveness but also praised his dedication and hard work. The very fact that plaintiff was offered a teaching position for the following year is strong evidence that defendants were not calling into question

his character or integrity.[3] Another important circumstance of this case is the fact that the criticisms of plaintiff's counseling methods were not communicated by the defendants to persons outside the Harrisonburg school system; the public airing of these criticisms at the School Board meetings was at plaintiff's insistence. Thus, there was apparently no effort to stigmatize plaintiff by publication of any charges against him.[4]

The record in this case demonstrates that defendant Meyers was faced with a situation in which considerable faculty opposition had developed regarding plaintiff's counseling methods, and several instances involving errors in judgment by the plaintiff had been brought to his attention.[5] Due to the fact that plaintiff was a probationary employee, defendants could have remedied this situation by simply refusing to renew his contract without giving any reasons. However, in opting to give plaintiff fairly specific reasons, defendants apparently sought to avoid any suggestion of arbitrariness or improper motivation.

The court does not read Roth, supra or its progeny as requiring a full evidentiary hearing in the circumstances of this case. In Roth, the court found no implication of a liberty interest by the mere decision not to renew a teaching contract:

"Mere proof, for example, that his record of non-retention in one job, taken alone, might make him somewhat less attractive to some other employers would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of 'liberty.' Cf. Schware v. Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1

3. Plaintiff does not deny the defendants' assertion that he was offered a teaching position in fields for which he had been certified to teach [at his same salary level] and that he was told that he might later be considered for a guidance position.

4. Defendants have reiterated in their brief in support of their motion for summary judgment their willingness to delete any material

from plaintiff's file which he considers derogatory.

5. Plaintiff's own deposition reveals at least one instance in which he failed to maintain student confidentiality, and the deposition of defendant Meyers indicates instances in which plaintiff had made schedule changes without first getting the necessary approval.

L.Ed.2d 796." 408 U.S. at 574 n. 13, 92 S.Ct. at 2708.

At the other extreme are cases such as *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) involving the public posting of charges of chronic alcoholism, or *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951) involving charges of subversive associations, which clearly implicate an individual's liberty interest. The case at bar falls between these extremes by virtue of the reasons given to the plaintiff, however the court does not believe that the "liberty" interest discussed in *Roth* was intended to encompass the instant situation.

The court's conclusion in this regard is reinforced from a consideration of several cases decided subsequent to *Roth*. For example, in the recent case of *LaBorde v. Franklin Parish School Board*, 510 F.2d 590 (5th Cir. 1975) a teacher challenged on due process grounds the decision of the School Board not to renew her contract for various reasons including such things as "use of language unbecoming a teacher"; and "use of harsh discipline against girls in the Junior High School." The court stated with respect to the claim that such non-renewal implicated her liberty interest and therefore required a hearing:

"She was a probationary teacher, and the reasons which the school board gave her for terminating her contract were no more than the reflection of dissatisfaction with her teaching methods and classroom conduct. None of the charges were made public by school officials. The brief mention in the local paper that her contract had not been renewed did not impugn Mrs. LaBorde's good name, honor or integrity. Under *Roth's* standards, her liberty claim was properly denied." 510 F.2d at 593.

Under similar circumstances, the Sixth Circuit in *Blair v. Board of Regents*, 496 F.2d 322 (6th Cir. 1974) stated:

"It can be argued that the failure of any school system to renew the contract of any teacher on grounds of failure to meet minimum standards in his relationship with students may injure the reputation of the teacher in the academic community. We do not read *Roth* to mean that this situation requires a hearing under the Due Process Clause." 496 F.2d at 324.

To the same effect are *Shirck v. Thomas*, 486 F.2d 691 (7th Cir. 1973) where a teacher's contract was not renewed because of the quality of her work; and *Russell v. Hodges*, 470 F.2d 212 (2d Cir. 1972) in which a police officer was dismissed for allegedly sleeping on duty, being absent from his post without authorization and wearing improper attire. In *Russell* Judge Friendly quite aptly noted:

"[W]e believe the Court [in Roth] was thinking of something considerably graver than a charge of failure to perform a particular job, lying within the employee's power to correct; the cases cited as illustrations involved charges of chronic alcoholism or association with subversive organizations. Indeed, a general rule that informing an employee of job-related reasons for termination created a right to a hearing in circumstances where there was no constitutional requirement for the state to do anything would be self-defeating; the state would merely opt to give no reasons and the employee would lose the benefit of knowing what might profit him in the future." 470 F.2d at 217.

Finally, the court notes that in *Bishop v. Wood*, 498 F.2d 1341 (4th Cir. 1974), *aff'g* 377 F.Supp. 501 (W.D.N.C.1973) the Fourth Circuit affirmed the decision of the district court which had granted summary judgment for defendants who had dismissed the plaintiff from his job as a policeman, without a hearing, allegedly for "insubordination" and "conduct unsuited to a police officer." *Accord, Berry v. Hamlin*, 356 F.Supp. 306 (M.

D.Pa.1973); *Jones v. Kelly*, 347 F.Supp. 1260 (E.D.Va.1972).

The case at bar is not factually distinguishable from the above cases; as in those cases, plaintiff's contract was not renewed simply because his performance failed to meet the needs of his employer during his probationary period. In fact, plaintiff's case is somewhat less appealing than those cited above in that he was afforded two opportunities to appear before the School Board and argue for the renewal of his contract as a guidance counselor. Although these hearings did not allow plaintiff an opportunity to question particular evidence relied upon by Mr. Meyers, he was allowed to generally defend his performance and philosophy of counseling. The court doubts that any hearing was constitutionally required in the circumstances of this case, however, to the extent that the reasons given plaintiff could be said to have implicated his "liberty" interest, then the court believes the limited hearings afforded plaintiff were sufficient. *See Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).[6] On the basis of the above authority and the undisputed facts of this case, the court is accordingly of the opinion that plaintiff's claim that he was denied procedural due process of law is without merit.

Plaintiff's allegations of substantive constitutional violations require only brief discussion. Plaintiff alleges that the refusal to renew his contract as a guidance counselor violated his rights of academic freedom, freedom of speech, privacy and substantive due process. However, from the record in this case it is clear that the basis for the non-renewal of plaintiff's contract as a guidance counselor was teacher discontent with his performance which threatened the efficient operation of the school. There is simply no basis for a claim that the refusal to renew his contract was in retaliation for his exercise of protected speech. And the court has no doubt that if the school administration reasonably felt that plaintiff's counseling methods or their results caused disruption in the operation of the school, they could refuse to renew his contract. This is particularly obvious in the present case where plaintiff's employment status was non-tenured in order that his performance could be evaluated in light of the needs of the school. *See Chitwood v. Feaster*, 468 F.2d 359 (4th Cir. 1972). Plaintiff's contention that his right to privacy was violated is similarly without merit. As noted above, defendants did not publicize the reasons for plaintiff's discharge. In short, the court is of the opinion that the undisputed facts of this case demonstrate that the actions of the defendants in refusing to renew plaintiff's contract as a guidance counselor were within their discretion and not in violation of any rights guaranteed by the Constitution to plaintiff.

Accordingly, it is the judgment of this court that the defendants' motion for summary judgment be, and the same hereby is, granted.

---

6. "The types of 'liberty' . . . protected by the Due Process Clause vary widely, and what may be required under that clause in dealing with one set of interests which it protects may not be required in dealing with another set of interests." 416 U.S. at 155, 94 S.Ct. at 1645.