Hermino CUESTA, Joann Barbagallo, Carlos Chaluisan, Jeannette Davilla, Christopher Garcia, Earl Hall, James Lee, Samuel Leon, Katherine Oliver, Victor Ortiz, Paul E. Parker, Josep Riffas, Henry Seltzer, Jeff Skopp, Sharon Smalls and Stephen Walters, on their own behalf and on behalf of all others similarly situated, Plaintiffs,

v.

The STATE OF NEW YORK OFFICE OF COURT ADMINISTRATION; Honorable Herbert B. Evans, in his capacity as State Administrative Judge of the New York State Office of Court Administration; the New York State Civil Service Commission; and Joseph A.F. Valenti, in his capacity as President of the New York State Civil Service Commission and Civil Service Commission, Defendants.

No. 83 Civ. 3714 (PNL).

United States District Court,
S.D. New York.

Sept. 16, 1983.

Gordon, Schechtman & Gordon, Murray A. Gordon, Richard Imbrogno, New York City, for plaintiffs.

Office of Court Administration Paul A. Feigenbaum, John Eiseman, New York City, for defendants Evans and Office of Court Admin.

Robert Abrams, Atty. Gen., of New York, Melvyn R. Leventhal, Deputy First Asst. Atty. Gen., Stanley A. Camhi, Howard L. Zwickel, Asst. Attys. Gen., New York City, for defendants Valenti and Civil Service Com'n.

## OPINION AND ORDER

LEVAL, District Judge.

Plaintiffs are provisional New York State court officers. They were appointed by virtue of their performance on a 1977 competitive examination, but received only provisional appointments because that examina- tion was challenged for racial discrimina- tion in *Underwood v. Office of Court Ad- ministration,* 78 Civ. 4382 (CSH). Pursuant to a class action consent judgment in that case, the State developed and administered a new examination in 1982. A new eligibles list has been established based on the re- sults of that exam, under which new per- manent appointments are being made to positions provisionally held by plaintiffs.

Plaintiffs, who include whites, blacks and Hispanics, assert that the new 1982 test is invalid under 42 U.S.C. §§ 2000e *et seq.* (Title VII) because it had a disparate im- pact on minorities and is insufficiently job- related. They also assert claims under New York law. They seek certification of a plaintiff class consisting generally of provi- sionals who are not likely to receive perma- nent appointment under the *Underwood* exam. They now move for a preliminary injunction against dismissal of any of the provisionals and against the permanent ap- pointment of candidates from the new eligi- bles list. A hearing has been conducted by the submission of depositions and affidavits. All parties have advised the court that the record is complete for decision of the mo- tion for preliminary injunction.

In this Circuit preliminary injunctive re- lief requires a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the par- ty requesting the preliminary relief. *Jack- son Dairy, Inc. v. H.P. Hood & Sons,* 596 F.2d 70, 72 (2 Cir.1979). Plaintiffs have not shown that they will suffer irreparable harm to meet the first part of the test. Even if they had, they do not meet either branch on the second part of the test. They fail to show a likelihood of success on the merits, and while there may be a fair ground for litigation, the balance of hard- ships is not decidedly in their favor.

### I. Irreparable Harm

■ Plaintiffs allege that they will suf- fer irreparable injury because (1) they will

lose their jobs, and (2) newly hired permanent court officers will block the opportunities for appointment in the event plaintiffs prevail.

While I am sympathetic to plaintiffs' situation, the temporary loss of income and position is not necessarily an "irreparable injury," as that standard has been interpreted. *Sampson v. Murray,* 415 U.S. 61, 88–92 & n. 68, 94 S.Ct. 937, 951–53 & n. 68, 39 L.Ed.2d 166 (1974); *Holt v. Continental Group, Inc.,* 708 F.2d 87, 90–91 (2 Cir.1983). Dismissal may be an irreparable injury in special circumstances including, for example, cases of retaliatory dismissal. *E.g., Sheehan v. Purolator Courier Corp.,* 676 F.2d 877, 879–80 n. 3 (2 Cir.1982) (remanding for consideration of, inter alia, plaintiff's claim that her employer prevented her from finding other employment); *Aguilar v. Baine Service Systems, Inc.,* 538 F.Supp. 581, 584 (S.D.N.Y.1982) (plaintiffs faced "eviction, cut-off of their utilities and the inability to provide for their children"). Plaintiffs have submitted only one affidavit attesting to harm caused a particular individual by the loss of her job, and it is insufficient to warrant preliminary relief. Certainly plaintiffs have made no showing of irreparable harm affecting the class across the board.

■ Plaintiffs also allege that they will suffer irreparable injury because the appointment of permanent court officers will as a practical matter cut off the possibility of reinstatement should plaintiffs prevail. But if the new eligibles list developed under the *Underwood* decree is held invalid, the court's remedial powers can repair any damage done by the current appointments. This case is fundamentally different from those where use of a challenged eligibles list would intolerably prolong and cement the exclusion of minorities. *See Chance v. Board of Examiners,* 330 F.Supp. 203, 224 (S.D.N.Y.1971), *affirmed,* 458 F.2d 1167, 1178 (2 Cir.1972); *Firefighters Institute v. City of St. Louis,* 616 F.2d 350, 362 & n. 21 (8 Cir.1980).

## II. Likelihood of success

■ Plaintiffs' claims on the merits cannot be characterized as likely to succeed.

First, an injunction to maintain the status quo would grant relief beyond what can be expected when the litigation is completed. Even if plaintiffs succeed in proving the test invalid, they do not even claim a right to remain in their jobs. The best they can hope for is that a new selection procedure will be devised on which they can compete yet again for a permanent appointment.[1]

Second, a preliminary examination of plaintiffs' attack on the merits of the 1982 examination suggests that their success is at best uncertain. Leaving aside whether the white plaintiffs have any claim at all, the plaintiffs seek to prove that the examination discriminated on the basis of race. Under the test first set forth in *Griggs v. Duke Power,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), they must show that the test had an adverse impact on minority candidates. This they may be able to do.[2]

1. It should also be noted that in this respect, the plaintiffs' case suffers from a troubling fundamental lack of community of interest in the plaintiff class. The asserted class includes whites, blacks and Hispanics linked together only by the fact that they now hold the job provisionally and are unlikely to secure permanent appointment if the challenged exam is given effect. Even assuming the exam were found deficient for discrimination against minorities, it is difficult to see how that would entitle white provisional incumbents to injunctive relief. In addition the asserted class includes provisionals who were given a preferred status for the *Underwood* test and other provisionals of more junior tenure who were not.

On several issues in this case the interests of these two groups are opposed.

2. Two tests were actually given: one for court officers (known as "UCO"s) and one for Senior Court Officers ("SCOs"). Among candidates at large, both tests had a disparate impact within the 80% rule endorsed in *Guardians Association of New York City v. Civil Service,* 630 F.2d 79, 88 (2 Cir.1980). Defendants point out that among provisionals the test had no disparate impact, and that among promotional candidates (as opposed to open-competitive candidates) the SCO test had no disparate impact. Although the issue is unclear, this opinion assumes that these contentions do not refute the showing of adverse impact.

The burden then shifts to defendants to show that the test was job-related. A preliminary review of the evidence and argumentation submitted suggests that on this score defendants make a strong showing.

The 1982 competitive examinations were developed by an employment testing concern, under the supervision of a Special Master who is a leading authority on the subject. The design began with a thorough analysis, which plaintiffs do not impugn, of the court officer's job. Defendants assert that in two legally adequate ways the test accurately measures for the job. First, they argue that it is "content valid," or that it measures the actual knowledges, skills or abilities required for the job. *See* Uniform Guidelines on Employee Selection Procedures, 29 C.F.R. § 1607 (Guidelines) § 14(C); *Guardians Association of New York City v. Civil Service,* 630 F.2d 79, 92 (2 Cir.1980). Second, they argue that it is "construct valid", or that it measures certain more abstract inferred capacities—such as aptitude or judgment—required for successful performance. *See Guardians,* 630 F.2d at 92–93.

Plaintiffs argue that defendants should be required to validate the test by the "criterion-related" method: correlating performance on the test with measures of actual successful performance on the job. There is no requirement that this method be used, *see, e.g., Guardians, supra,* and defendants give two plausible reasons why it would have been inappropriate in this case. They contend that no accurate measures of job performance were available, and that the supervisory personnel who would have had to cooperate in their development were unwilling to do so. Under the circumstances, furthermore, since the contestant field included persons who had acted for a period of years on the job in provisional status, the "criterion-related" approach would have given these contestants an unfair advantage over contestants who might be better endowed with personal qualities but lack the familiarity with job procedures which the provisionals had acquired through on-the-job training.

Plaintiffs also contend that the examination was not content or construct valid for several reasons. First, as defendants admit, the written examination measured a small percentage of the job content. But defendants point out that a large proportion of the job is not appropriate for testing since it is learned on the job, *see* Guidelines § 14(C)(1), and that a further portion is not amenable to written examination and was thus tested in a subsequent non-written procedure. Second, plaintiffs argue that the abilities for which the examination tested are too abstract for content validation, so that only the strategies associated with construct validation could prove job-relatedness. They point out that, under the Uniform Guidelines, if an examination tests for constructs rather than actual job content, its validity must be shown not only by proper job analysis and test development but also by "empirical evidence from one or more criterion-related studies." Guidelines § 14(D)(3). But, as the Court of Appeals observed in *Guardians, supra,* 630 F.2d at 92–94, the Guidelines overstate the distinction between content and construct validation. *Guardians* endorsed a "functional approach" to the selection of a validation strategy, in which the arduous process of construct validation is not required "as long as the abilities that the test attempts to measure are no more abstract than necessary, that is, as long as they are the most observable abilities of significance to the particular job in question". *Id.* at 93. Moreover, defendants did go significantly beyond the Guidelines requirements for content validation, even if their strategy did not meet the full requirements for construct validation. There is a substantial likelihood that defendants will succeed in showing that the test was appropriate.[3]

Finally, although I do not rely on this ground, it should be noted that defendants

---

**3.** Nor does plaintiffs' objection to the cutoff score and to the use of rank ordered scoring appear persuasive.

have raised substantial questions of justiciability. The 1982 examination at issue was administered pursuant to a consent judgment in the *Underwood* class action. In that action, Judge Haight sought to have the development of the exam publicized, and he solicited objections prior to its administration. These plaintiffs sought to intervene only after the results of the test were announced. Their attempt to intervene in that action was denied as untimely. Defendants argue that this court is without jurisdiction to entertain an attack on the *Underwood* judgment. *See, e.g., Dennison v. City of Los Angeles,* 658 F.2d 694 (9 Cir.1981); *Prate v. Freedman,* 430 F.Supp. 1373 (W.D.N.Y.), *aff'd without opinion,* 573 F.2d 1294 (2 Cir.1977), *cert. denied,* 436 U.S. 922, 98 S.Ct. 2274, 56 L.Ed.2d 765 (1978). *See also Prate v. Freedman,* 583 F.2d 42, 46 & n. 3 (2 Cir.1978). It is also urged that many of the plaintiffs here may be bound by that judgment under principles of res judicata. While I am not prepared to rule on this contention, it casts further doubt on plaintiffs' likelihood of success.

In short, while plaintiffs present serious questions for litigation, their prospects on the merits are not bright. Defendants have made a substantial motion to dismiss and have powerful arguments in defense of the examination, and plaintiffs' status quo injunction would exceed the scope of final relief. For all these reasons, plaintiffs have not shown a likelihood of success.

III. Balance of Hardships

■ The denial of preliminary relief may well cause hardships for certain plaintiffs. Nevertheless, plaintiffs as provisional appointees have been continually subject to termination since they were appointed, *see* N.Y. Civil Service L. § 65(4); *Russell v. Hodges,* 470 F.2d 212 (2 Cir.1972). They do not dispute Judge Haight's finding that they have been aware of their fragile tenure. *See* Opinion of April 28, 1983, *Underwood, supra.* The fact that their employment status has always been provisional mitigates somewhat the hardship from the loss of their jobs.

The hardship on the other side is more compelling. Successful candidates on the 1982 examination await appointment; some have already been appointed. The State of New York has made a prolonged and extraordinarily diligent attempt to develop acceptable hiring procedures. It has apparently sought throughout the *Underwood* test development to treat the various constituencies fairly and even compassionately. In the process the state court system has suffered from constant uncertainty about its personnel. There is a strong public interest in permitting the hiring of new permanent court officers unless the selection procedure is so doubtful as to create a substantial likelihood that it will eventually be struck down. That is not the case here, and the defendants make a strong equitable appeal for proceeding to staff the court system.

IV. Conclusion

The motion for a preliminary injunction is denied.

SO ORDERED.