**Esther L. FEINERMAN, Individually, Plaintiff,**

v.

**C. Herschel JONES et al., Defendants.**
**Civ. No. 72–94.**

United States District Court,
M. D. Pennsylvania.
Jan. 10, 1973.

Rajeshwar Kumar, Camp Hill, Pa., for plaintiff.

Lawrence T. Hoyle, Jr., J. Justin Blewitt, Jr., Deputy Attys. Gen., Harrisburg, Pa., for defendants.

Before MAX ROSENN, Circuit Judge, and NEALON and MUIR, District Judges.

## MEMORANDUM

NEALON, District Judge.

In this civil rights action plaintiff, Esther L. Feinerman, attacks the constitutionality of certain sections of the Pennsylvania Veterans' Preference Act of 1945, Pa.Stat.Ann. tit. 51 § 492.2 et seq. Plaintiff contends that the provision of the Act granting a ten-point bonus to the score of any veteran receiving a passing grade on the state civil service examination discriminates against non-veterans generally and women, particularly, in violation of the due process and equal protection clauses of the 14th Amendment to the United States Constitution.

■■■ The jurisdiction of the Court is invoked under 28 U.S.C. sections 1343, 2284 and 42 U.S.C. § 1983. Since plaintiff seeks to restrain the enforcement of a State statute, a three-judge District Court was assigned to hear the action in conformity with the provisions of 28 U.S.C. sections 2281 and 2284. *See* Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1941). The case came on for hearing on May 26, 1972, from which the following facts appear.[1]

## I. *Facts*

The plaintiff has been employed as an Information Writer II, a position in the classified service, on provisional status in Pennsylvania's Department of Education since November 16, 1970. On September 18, 1971, she took and passed the Civil Service Examination conducted by the State Civil Service Commission, receiving a grade of 91.57. Only one other applicant taking the test received a higher raw score. However, because of the application of the ten-point bonus granted by the Veterans' Preference Act, five other applicants, all veterans, had higher final ratings and were placed ahead of plaintiff on the employment list. Pursuant to Section 601.3.1 of the Rules of the State Civil Service Commission,

---

[1]. It has been suggested that the court, in its discretion, should refrain from exercising its jurisdiction here until the Pennsylvania courts have had the opportunity to resolve a question of statutory construction; i. e. whether the 1963 amendment to the Civil Service Act, 71 P.S. § 741.905a providing that ". . . [n]o officer . . . of the Commonwealth shall discriminate against any person in . . . appointment . . . to the classified service because of . . . race, national origin or other *non-merit* factors" has impliedly repealed the Veterans' Preference Act. Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); Harman v. Forssenius, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965). However, as will be seen below, the Pennsylvania courts have always construed the granting of a perference for veterans who have passed civil service exams to be merit related and "conducive to the better performance of public duties." Commonwealth ex rel. Graham v. Schmid, 333 Pa. 568, 3 A.2d 701 (1938). Consequently, since the question of state law is not uncertain, abstention would not be proper.

the names of the three eligibles having the highest final rating were certified by the Director of the Commission to the appointing power to fill the position of Information Writer II. Since plaintiff's name was not among the three so certified, she was notified on February 2, 1972, that she would have to leave her employment.

The granting of ten-point bonuses to veterans is made in accordance with § 3 of the Veterans' Preference Act which provides

"Whenever any soldier shall successfully pass a civil service appointment or promotional examination for a public position under the Commonwealth . . . such soldier's examination shall be marked or graded an additional ten points above the mark or grade credited for the examination, and the total mark or grade thus obtained shall represent the final mark or grade of such soldier, and shall determine his standing on any eligible or promotional list, certified or furnished to the appointing or promoting power."

Pa.Stat.Ann. tit. 51 § 492.3

According to § 2 of the Act, the bonus for veterans is given in recognition of "the discipline and experience represented by his military training and for the loyalty and public spirit demonstrated by his service for the preservation of his country." Pa.Stat.Ann. tit. 51 § 492.2. Plaintiff asserts, first, that the right to public employment is a fundamental "right" or fundamental "interest" which, when affected by veterans' preference must be justified by a compelling state interest. Secondly, she argues in the alternative that even if public employment is not deemed to be a fundamental interest, the preference for veterans constitutes discrimination in public employment on non-merit factors bearing no rational relationship to job qualification in violation of the equal protection clause of the 14th Amendment. Moreover, plaintiff further complains that because of the acute disproportion between men and women in the Armed Forces, preference for the veteran results principally for the benefit of men and, therefore, indirectly discriminates against women on the basis of sex. Finally, § 7 which provides for preference in civil service employment for wives and widows of veterans without making a similar provision for husbands and widowers, is attacked as creating a classification which discriminates against men. Inasmuch as the issues raised by plaintiff require different forms of analysis, her claims will be considered separately.

## II. *Merits*

### A. Standard

■ An essential element of any analysis involving the equal protection clause requires a determination of the appropriate standard to be used by which to gauge the constitutionality of a given statute. The traditional equal protection standard looks to the reasonableness of the classification in light of its possible intended purposes. Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). The classification must bear some rational relationship to a legitimate end and will be set aside as violative of the Equal Protection clause only if based on reasons totally unrelated to that goal. McDonald v. Board of Election Commissioners, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969). Under this test, the party challenging the constitutionality of a statute has the burden of proving that the statute denies him equal protection and it will not be set aside if it is reasonably related to some permissible legislative or administrative purpose. McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); Madden v. Kentucky, 309 U.S. 83, 88, 60 S.Ct. 406, 84 L.Ed. 590 (1940); Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911).

■ However, in recent years a stricter standard of review has emerged in cases where a classification is either based upon "suspect" criteria or involves a "fundamental" right or "fundamental"

interest. Such a classification will be held to be invalid unless it is shown to be necessary to promote a "compelling" state interest. Shapiro v. Thompson, *supra*. The compelling state interest test requires:

"(a) . . . that the challenged classification be strictly relevant to whatever purpose is claimed by the state to justify its use, and also that it be the fairest and least restrictive alternative evidently available for the pursuit of that purpose ("necessity"); and (b) . . . that the infringement of fundamental interests resulting from the classifications use be outweighed by the claimed state purpose ("compellingness")."

Michelman, The Supreme Court 1968 Term—Forward: On Protecting the Poor Through the Fourteenth Amendment, 83 Harv.L.Rev. 7, 20 n 34 (1969); *see also* Developments in the Law—Equal Protection, 82 Harv.L.Rev. 1065, 1124, 1125 (1969). Plaintiff would have the court apply the stricter equal protection standard here, contending that the right to be fairly considered for public employment is a fundamental interest and any classification affecting that right must be justified by a compelling state interest.

Before proceeding further, it would be well to put plaintiff's position in its proper context. Plaintiff is only claiming that she has a right to be fairly *considered* for public employment; she is not claiming that without veterans' preference, she would be *entitled* to a position. According to plaintiff's complaint, under Sec. 601 of the Rules of the Civil Service Commission, the Director of the Commission certifies to the appointing power the names of three eligibles who appear highest on the eligible list. The appointing power then reviews the relative merits of the candidates and selects a person for appointment from the list of three eligibles, not necessarily the eligible with the highest score. It is true that under Section 4 of the Act, if one of the three names is a veteran, he must be given an absolute preference and that preference may be given to a veteran who has passed the exam even though his name does not appear on the certified list. Pa.Stat.Ann. Tit. 51 § 492.4. However, if all three eligibles are veterans, the appointing power theoretically could select the applicant with the lowest score. Hence, the appointing power has discretion to make its own appointment, taking into consideration other factors besides the applicant's raw score on the test. In addition, it would be possible for the appointing power to refuse to make any appointment from the eligible list if, for example, in the opinion of the appointing power, the character of the applicant was less than desirable. *See* Pa.Stat.Ann. Tit. 71 § 741.501; Commonwealth ex rel. Graham v. Schmid, 333 Pa. 568, 578, 3 A.2d 701 (1938). Consequently since no one, including veterans, is "entitled" to public employment as the result of scoring highest in the test, plaintiff has only been denied the opportunity to be *considered* equally with veterans.

 While it was once true that the state possessed all the rights of a private employer and, therefore, encountered no restrictions under the 14th Amendment in the area of public employment, *see* Heim v. McCall, 239 U.S. 175, 36 S.Ct. 78, 60 L.Ed. 206 (1915), it is no longer the case. In recent years, this right-privilege distinction which served as a limitation on the substantive and procedural due process due an employee in the public sector has been seriously eroded, if not rejected. *See* e. g. Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); Slochower v. Board of Higher Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956); Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952). See generally, Van Alstyne, The Demise of the Right-Privilege Distinction in Constitutional Law, 81 Harv.L.Rev. 1439 (1968). For example, a state may not condition public employment upon the surrender of a con-

stitutional right. *See* Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L. Ed. 216 *supra*. Nor may the state in determining whom to admit to public employment, classify individuals as eligible or ineligible where the basis of such classification is "arbitrary or discriminatory". Slochower v. Board of Higher Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 *supra*. However, while it is one thing to say that public employment may no longer be subject to unlimited conditions in a due process sense, it is another to say that the abstract right to be fairly considered for public employment is a fundamental right for purposes of equal protection analysis. The concepts used and the cases applicable in making an equal protection analysis are quite different from those used in answering a due process question. None of the cases cited above, nor any brought to our attention by plaintiff have held that there is a bare fundamental right to public employment. All of the cases which have talked of the need for compelling state interests in connection with state employment practices have either involved other constitutional rights, such as first amendment freedoms, or have dealt with the exclusion or dismissal of people from public employment on arbitrary grounds without proper due process procedures.

■ Moreover, those fundamental rights which have been recognized by the Supreme Court for application of the stricter equal protection standard are those which tend to penalize the exercise of a right expressly safeguarded by the Constitution, e. g. Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) (free exercise of religion); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) (right to vote); McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (right to be free from racial discrimination); Shapiro v. Thompson, *supra* (right to travel). These cases represent a recognition of established constitutional rights which are to be given "no less protection than the Constitution itself demands." Shapiro v. Thompson, 394 U.S. *supra* at 642, 89 S.Ct. at 1335 (Stewart, J., concurring). As was pointed out in Koelfgen v. Jackson, Civ.Action 4–71–314, 355 F.Supp. 243 (D.Minn. Sept. 20, 1972), a case which recently upheld the constitutionality of a similar veterans' preference statute in Minnesota:

> "[C]ourts should be reluctant to find a right to be 'fundamental,' unless it is clearly set out in the Constitution. By so finding, the Court subjects legislation affecting that right to much closer scrutiny, a situation which invites conflict between the courts and the legislature. This type of conflict should be avoided except when a right which is clearly at the foundation of our system of government is involved. Only then should the legislature's considered judgment be subject to the 'compelling state interest' test. The 'right to be fairly considered for public employment,' as the term is used by the plaintiffs, clearly is not such a 'fundamental right.'"

*Id.* at 250. *See also* Shapiro v. Thompson, *supra* (Harlan, J. dissenting).

In view of the lack of authority in support of plaintiff's position and our own agreement that only those rights expressly safeguarded by the Constitution should require a stricter equal protection standard, the "compelling state interest" test will not be applied here.

■ Since the abstract right to be fairly considered for public employment does not involve a "fundamental right" or "fundamental interest", the "rational basis" test must be applied to test the validity of the Veterans' Preference Act. As noted above, plaintiff has the burden of overcoming the presumption of constitutionality and of proving that veterans' preference is arbitrary and not

reasonably related to some permissible legislative or administrative purpose.

### B. Discrimination Against Non-Veterans

Section 492.3 of the Veterans' Preference Act, which awards a ten-point bonus to all veterans who have scored a passing grade on civil service tests, is typical of the many State and Federal statutory provisions giving veterans' preference in public employment.[2] Plaintiff contends that such a bonus for veterans is unconstitutional in that it denies equal protection of the law by creating two classes, veterans and non-veterans, extending to the former benefits which it denies to others.

As pointed out in Koelfgen v. Jackson, *supra*, there are three underlying justifications in most of these cases upholding the various Veterans' Preference Acts:

(1) As a recognition that the experience, discipline, and loyalty which veterans gain in military service is conducive to the better performance of public duties;

(2) As a reward for those veterans who, either involuntarily or through enlistment, have served their country in time of war; and

(3) As an aid in the rehabilitation and relocation of the veteran whose normal life style has been disrupted by military service.[3]

In adopting the Veterans' Preference Act, the Pennsylvania legislature expressly recognized the first two reasons set out above as justifying giving preference to veterans. Section 2 of the Act provides that credit will be given to a veteran on appointment "for the discipline and experience represented by his military training *and* for the loyalty and public spirit demonstrated by his service for the preservation of his country." Pa. Stat.Ann. Tit. 51 § 492.2. Similarly, in Commonwealth ex rel. Graham v. Schmid, *supra*, a case challenging the validity of granting a bonus to veterans under a prior veterans' preference provision, the Pennsylvania Supreme Court stated its purpose in this manner:

> "As a basis for appointment it is not unreasonable to select war veterans from candidates for office and to give them a certain credit in recognition of the discipline, experience and service represented by their military activity. No one should deny that these advantages are conducive to the better performance of public duties, where discipline, loyalty, and public spirit are likewise essential."

*Id.* 333 Pa. at 573, 3 A.2d at 704.

In *Graham*, the court sustained the validity of granting a fifteen-point bonus to veterans taking appointment examinations, so long as the applicants initially received a passing grade.[4] At the same time, however, the court struck down a provision of the statute granting 15% credit to all veterans taking the examinations, regardless of whether they achieved a passing grade. The court

---

2. Some of the cases which have upheld the granting of veterans' preference include: White v. Gates, 102 U.S.App.D.C. 346, 253 F.2d 868 (1958), cert. denied, 356 U.S. 973, 78 S.Ct. 1136, 2 L.Ed.2d 1147 (1958); Koelfgen v. Jackson, Civ. No. 4–71–314 (D.Minn. June 1972); People ex rel. Sellers v. Brady, 262 Ill. 578, 105 N.E. 1 (1914); Shaw v. Marshalltown, 131 Iowa 128, 104 N.W. 1121 (1905); Goodrich v. Mitchell, 68 Kan. 765, 75 P. 1034 (1904); Ricks v. Dept. of State Civil Service, 200 La. 341, 8 So.2d 49 (1942); Opinion of Justices, 166 Mass. 589, 44 N.E. 625 (1896); Swantush v. Detroit, 257 Mich. 389, 241 N.W. 265 (1932); Gianatasio v. Kaplan, 257 N.Y. 531, 178 N.E. 782, cert. denied, 284 U.S. 595, 52 S.Ct. 203, 76 L.Ed. 512 (1932); State ex rel. Raines v. Seattle, 134 Wash. 360, 235 P. 968 (1925).

3. A fourth motive which could reasonably be advanced is an inducement for young men to join the military. *See* Hutcheson v. Director of Civil Service, Mass., 281 N.E.2d 53 (1972).

4. The challenged statute was said to violate Article III, § 7 of the Pennsylvania Constitution, prohibiting laws granting special or exclusive privileges or immunities to any individual. The provision is essentially the equivalent of the equal protection clause of the 14th Amendment.

found that in the latter situation too high a value was placed on military service having no correlation to minimum job qualifications.

Since *Graham*, the Pennsylvania courts have had other occasions to examine the justification for preferring veterans in other contexts and in each case have not hesitated to declare them invalid where the preference given did not relate to ability to perform public duties. For example, in Carney v. Lowe, 336 Pa. 289, 9 A.2d 418 (1939), a provision of the prior Act waiving age requirements for veterans was found to be unreasonable and therefore unconstitutional. And, in Commonwealth ex rel. Maurer v. O'Neill, 368 Pa. 369, 83 A.2d 382 (1951), the provision of section 3 of the Act granting the same preference to veterans in civil service examinations for promotion as was granted in original appointments was struck down as being " . . . a totally unjustified appraisal of the value of . . . military training and highly prejudicial to the public service." Id. at 373, 83 A.2d at 383. However, the court reaffirmed the *Graham* holding that in the case of an original appointment the training that a veteran received in the armed forces is conducive to making him a more desirable employee. In addition, all of the courts which have examined the granting of a preference once an applicant has passed an appointment examination have found it to be rationally related to one of the state objectives set out above.[5]

▮▮▮ Yet, despite the weight of authority to the contrary, plaintiff still insists that there is no rational relationship between job qualification and military training. While plaintiff has submitted tables showing that few veterans will have performed jobs similar to those they are applying for, she has not made any showing that military training does not prepare veterans to be better qualified to perform public duties. Nor has she shown that extending benefits to veterans as a reward for past military service is irrational. As noted above, in order to prevail in her attack on veterans' preference, plaintiff has the burden of presenting evidence that granting a veterans' preference is irrational. Merely showing that the law affects the activities of some groups differently from others or that the legislature could have acted in another manner is not sufficient to invalidate the legislation. Plaintiff must show that there is no rational basis for veterans' preference. This, plaintiff has not done. Therefore, we conclude that the granting of a preference for original appointment to veterans who have initially passed a civil service examination is not violative of the equal protection clause of the Fourteenth Amendment of the Constitution of the United States.

## C. Discrimination Against Women.

Plaintiff further contends that because of the acute disproportion between men and women in the Armed Services, veterans' preference is principally for the benefit of men and, therefore, indirectly discriminates against women. Plaintiff maintains that since less than two (2) per cent of all military personnel are women, men have a much greater opportunity to take advantage of the bonus provided by the Act. She claims that burdensome conditions of entry and retention, such as a nonmarital status and lack of dependents, keep many women out of the Armed Forces. Defendants, of course deny these allegations. They point out that the benefits provided in veterans' preference are equally available to men and women.[6] Moreover, they contend that since the Armed Forces are open to all women, the fact that women have decided not to assume the burden of national defense in numbers as great as men does not mean that women have been discriminated against, either directly or indirectly.

5. See cases cited in note 2 *supra*.

6. Section 1 of the Act was amended in 1971 to include women within the definition of "soldier" as used in the Act.

Plaintiff concedes that this case does not involve legislation which discriminates on its face, *see e. g.*, Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967), or even a neutral legislative scheme applied in an intentionally discriminatory manner. Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). Rather she claims that her right to the equal protection of the laws has been violated by a statute which, although neutral on its face, has an unintentional discriminatory effect. While no cases have been found applying this *de facto* classification theory in a sex context, it has been applied numerous times in a racial context. *See e. g.* O'Neill v. Commonwealth of Pennsylvania, 473 F.2d 1029 (3d Cir. 1972); Chance v. Board of Examiners, 458 F.2d 1167, and cases cited at 1176 (2d Cir. 1972). Although the Supreme Court has demonstrated particular concern in racial discrimination cases, *see e. g.* Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); we will nevertheless assume that if properly established, the theory would have application here. However, based on the record before us, we conclude that plaintiff has not made out a *prima facie* case of invidious *de facto* discrimination.

 Plaintiff's Exhibit VIII shows that between the years 1962 and 1971, the state has made 34,347 male civil service appointments and 31,392 female appointments. Of the total females appointed, a little over 2% were veterans while approximately 35% of the males appointed were veterans. While these figures show that a small percentage of the women appointed are veterans, in view of the fact that almost 48% of the total number of civil service ap-

pointees are women, they do not necessarily indicate that Veterans' Preference has had a harsh discriminatory impact on the employment opportunities of women. Plaintiff has not made any showing of how many women have been deprived of positions because of a lack of veterans' preference, nor has she shown how many men have received their jobs because of veterans' preference. She has merely shown that of the total number of women appointed, only a small percentage were veterans. In our opinion, this does not amount to the type of unexplained disparity that is required to establish a *prima facie* case of *de facto* discrimination.

 Moreover, assuming arguendo that a *prima facie* case of *de facto* discrimination has been established, we are of the opinion that it can be justified under the standard of review applicable here. In a case such as this, where a neutral statute has allegedly discriminatory effects, courts have applied a less stringent standard by which to test its validity than if the discrimination was intentional and direct.[7] *See e. g.* Castro v. Beecher, 459 F.2d 725 (1st Cir. 1972); Chance v. Board of Examiners, 458 F.2d 1167 (2d Cir. 1972); Carter v. Gallagher, 452 F.2d 315 (8th Cir. 1972); Penn v. Stumpf, 308 F.Supp. 1238 (N.D. Calif.1970); Arrington v. Massachusetts Bay Transp. Auth., 306 F.Supp. 1355 (D. Mass.1969), *Cf.* Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed. 2d 158 (1971). In all these cases specific minority groups challenged the validity of apparently neutral hiring practices as being racially discriminatory in effect. However, rather than requiring the demonstration of a compelling state interest which is normally required in a case involving a suspect classification such as race, the courts adopted a less stringent standard. As stated in Castro v. Beecher, 459 F.2d *supra,*

---

7. *See also* The Supreme Court 1968 Term—Forward: On Protecting the Poor Through the Fourteenth Amendment, 83 Harv.L.Rev. 7, 20–22 (1969) where Professor Michelman makes the observation

that when dealing with a *de facto* classification on the basis of wealth, the traditional test is applicable unless the classification also creates the infringement of some other fundamental right.

"The public employer must, we think, in order to justify the use of a means of selection shown to have a racially disproportionate impact, demonstrate that the means is in fact substantially related to job performance. It may not, to state the matter another way, rely on any reasonable version of the facts, but must come forward with convincing facts establishing a fit between the qualification and the job." Id. at 732.

By way of an analogy to the above-cited cases, it logically follows then, that in this case, where the alleged discrimination is also unintentional, a less stringent standard of review should be required than that normally applied to an intentional sex-based classification. The Supreme Court recently formulated that test in Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971) when it said that unequal treatment based on sex "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation." 404 U.S. at 76, 92 S.Ct. at 252. Although the Court did not find sex a "suspect criteria", this standard is arguably more exacting than the traditional test applied in reviewing economic regulations, and would seem to require the state to demonstrate in fact a substantial relation to a legitimate state objective. *See* Wark v. Robbins, 458 F.2d 1295, 1297 n. 4 (1st Cir. 1972). Cf. Eisenstadt v. Baird, 405 U.S. 438, 447 n. 7, 92 S.Ct. 1029, 31 L.Ed. 2d 349 (1972).[8] Unlike this case, however, *Reed* involved a discrimination expressly created by statute. Consequently, a lesser standard of review is applicable here and we conclude that this standard should be the traditional equal protection test. McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1960). Having reached this conclusion, the justifications underlying the granting of veterans' preference discussed in the preceding section would equally justify it as against a challenge that it creates a *de facto* discrimination against women.

## D. Discrimination Against Men

■ Finally, plaintiff argues that section 7 of the Act which gives the same preferential rating to widows and wives of disabled soldiers as to soldiers discriminates against men on the basis of sex. Pa.Stat.Ann. Tit. 51 § 492.7. However, it will not be necessary to discuss the validity of this argument, for we find that plaintiff, a female, has no standing to assert the constitutional rights of males. She has made no claim that she has been personally harmed by the operation of section 7. The merits of this question could better be determined in a case involving a male non-veteran who claims he has been denied public employment by the operation of § 7, or a female who claims that a widow or a wife of a disabled veteran was rated higher than her because of veterans' preference.

Therefore, for the above-stated reasons, plaintiff's request for declaratory and injunctive relief will be denied.

---

8. *But see* Williams v. McNair, 401 U.S. 951, 91 S.Ct. 976, 28 L.Ed.2d 235 (1971), affirming without opinion a three-judge panel which sustained the exclusion of males from a state-supported school in South Carolina as a "reasonable classification".