Joseph W. BRANCH, Jr., et al., Plaintiffs,

v.

Reginald DU BOIS et al., Defendants.

No. 73 C 2167.

United States District Court, N. D. Illinois, E. D.

Sept. 13, 1976.

Judson H. Miner, Davis, Miner & Barnhill, Chicago, Ill., for plaintiffs.

Michael S. Small, Asst. Corp. Counsel, Chicago, Ill., for defendants.

Before TONE, Circuit Judge, and WILL and DECKER, District Judges.

**1130**

## OPINION

WILL, District Judge.

This opinion disposes of cross-motions for summary judgment filed by plaintiffs and defendants with respect to the constitutionality of Chapter 24, Illinois Revised Statutes, section 10–1–16 and related provisions. That statute provides for the addition to the scores on civil service examinations of "seven-tenths of one point for each 6 months or fraction thereof of military or naval service not exceeding 30 months" served during certain specified periods roughly corresponding to the times when this country was at war. Since the plaintiffs seek injunctive as well as declaratory relief, a three-judge court has been convened pursuant to 28 U.S.C. § 2281, et seq. to consider the constitutionality of the Illinois statute.

In Count I of the amended complaint, plaintiffs, individually and on behalf of all police officers who served in the military but not during the periods specified in the statute, seek declaratory and injunctive relief preventing the implementation of the statute. In Count II, plaintiffs seek such relief on behalf of all police officers who never served in the armed forces.

Plaintiffs charge that the point spread on civil service examinations is frequently so small that the military or naval service bonus of up to 3.5 points is crucial to employment. With respect to the Chicago Police Department promotional examination (the sergeants' exam) administered by defendants in 1968, for example, the initial point spread among the some 2,700 officers who passed the examination was allegedly only 15 points. Consequently, the effect of the up to 3.5 points made a significant difference in the final ranking of the applicants.

Plaintiffs' motion, accordingly, is based on the contention that the awarding of preference points to certain veterans constitutes a denial of equal protection to those who are not eligible for the points. The persons allegedly denied equal protection break down into three groups: 1) those who never served in the armed forces, 2) those who served but not during the periods of eligibility required by the statute, and 3) women, except those relatively few who served. The defendants' motion is based on the contention that the statute meets equal protection criteria with respect to each of the three groups.

### 1. *Those Who Never Served*

██ Plaintiffs contend that, with respect to applicants who have not served in the armed forces, the statute creates an "arbitrary and irrational classification that denies them equal protection of the law." A number of courts, however, have considered and rejected equal protection challenges to military preference in civil service hiring and promotion. *Koelfgen v. Jackson*, 355 F.Supp. 243 (D.Minn.1972), aff'd mem., 410 U.S. 976, 93 S.Ct. 1502, 36 L.Ed.2d 173 (1973); *Rios v. Dillman*, 499 F.2d 329 (5th Cir. 1974); *Feinerman v. Jones*, 356 F.Supp. 252 (M.D.Pa.1973). These and other cases hold that veterans preferences need meet only the minimum rational basis standard, since *public* employment is not a fundamental right in the "equal protection" sense and since a statute awarding benefits based on veterans status does not involve a suspect classification.

██ Veterans preferences in civil service hiring and promotion have been upheld, therefore, on the grounds that they promote the state's interest in rewarding those who have served their country, aid the transition from military to civilian life, and provide incentives to serve in the armed forces. Some courts have even concluded that a state may rationally assume that those who served in the military have acquired training and experience which will make them better civil servants. See *Feinerman v. Jones, supra*. While this latter ground may be debatable, the other three are clearly valid and are sufficient to sustain the statute in question from an equal protection challenge by those who have never served.

## 2. Those Who Served But Not During The Specified Periods

Plaintiffs argue that the statutory distinction between service during the time of recognized war (whether declared or not) and service during time of so-called "peace" is irrational and arbitrary and, therefore, violative of the fourteenth amendment since no appropriate governmental interest is suitably furthered by the differential treatment. Again applying the rational basis test, we conclude that the statute meets constitutional requirements.

The statute provides that preference points be awarded for service "at any time between September 16, 1940 and July 25, 1947, at any time during the national emergency between June 25, 1950 and January 31, 1955, or at any time between January 1, 1961 and the date Congress declares the Viet Nam conflict ended." The question, therefore, is whether the statutory periods bear any rational relationship to legitimate government policy. *Dandridge v. Williams,* 397 U.S. 471, 484–85, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

An even cursory review of the history of United States military involvements since World War II reveals the difficulty with attempting to distinguish between times of "peace" and of "war." From 1940 to 1974, men were drafted almost continuously without regard to the state of our military involvements. During this period, most men drafted even during time of war performed noncombatant tasks and consequently suffered minimum exposure to the possibility of bodily harm or death. Conversely, some of those drafted during times of "peace" found themselves in combat and performed tasks involving exposure to bodily harm or death. Congress recognized these realities when it amended the veterans laws in 1966 to reduce the distinction between war time and peace time service. See 89th Cong., 2d Sess., H.R.Rep. No. 1258

(1966). There is, therefore, some substance to plaintiffs' position.

■ Notwithstanding the foregoing, the Illinois statute meets the rational basis standard. The Illinois legislature could rationally conclude that military service during the times provided in the statute was more deserving of reward than service at other times. While it is true that not all military personnel have taken an active part in recent wars, including many who were in service during times of war, it is also true that the personal risks were generally greater in times of war than in times of peace, even for those engaged in noncombatant and support activities.

■■ The fact that some of those who served in times of "peace" were also shot at · does not invalidate the statutory scheme. The legislature may constitutionally choose to attack only part of a problem so long as "any set of facts may reasonably be conceived to justify" the selection of the part. *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 211 (1961). Arguments that the statute is unwise or could have been better drafted should be addressed to the legislature, not the Court. We conclude, therefore, that the statute in question does not violate the equal protection rights of those who served in the armed forces but not during the periods specified in the statute.

## 3. Women

Plaintiffs' final argument is that, because women have generally, by virtue of custom, regulation and statute, had less opportunity for military service than men, the granting of military preference points constitutes an impermissible discrimination against women.[1] They have submitted exhibits purporting to demonstrate that veterans preference points have a disproportionate impact on women and serve as a significant hinder-

---

1. Though many cases have considered challenges to the use of veterans preferences in civil service hiring and promotion, only *Anthony v. Commonwealth of Massachusetts,* 415 F.Supp. 485, 12 F.E.P. Cases 915 (D.Mass 1976) and *Feinerman v. Jones,* 356 F.Supp. 252 (M.D. Pa.1973) have considered claims that the points were discriminatory on the basis of sex.

ance to their advancement in the police department.[2]

Defendants admit that the use of preference points has a disproportionate impact on women, but argue that, because the statute on its face does not make sexual distinctions, sex discrimination analysis is inappropriate in this case. They point out that the disproportion between male and female veterans is the product of acts of Congress and the federal government and not of any action by the state. Accordingly, they contend that the various court decisions on which plaintiffs rely are inapposite and irrelevant to a constitutional analysis of the Illinois statutes in question.

■ Courts have frequently found that, where a facially neutral classification has a disproportionate impact on a certain group, it constitutes discrimination against that group and is actionable unless the classification can meet whatever standard of judicial scrutiny is appropriate. As the Supreme Court recently stated, *Washington v. Davis,* —— U.S. ——, 96 S.Ct. 2040, 2048, 48 L.Ed.2d 597 (1976), a statute otherwise neutral on its face, must not be applied so as invidiously to discriminate on the basis of race.

■ It should be noted that the extent of the discrimination against women under the statutes in question is somewhat unclear. Plaintiffs allege that they will serve to keep all women from ever advancing past the rank of patrolman, but that seems unlikely. To begin with, there are some women on the force who are veterans and eligible for preference points. Moreover, the points are not an absolute bar to the advancement of even those women who are not veterans, as reflected in plaintiffs' assertion that women who score in the top six percent of the sergeant's exam can expect to be promoted without veterans' points. (The comparable figure for men with veterans' points is the top 26 percent.) Thus, on this record, it can only be generalized that the use of preference points hinders the advancement of women but does not preclude it.

This fact distinguishes this case from *Anthony v. Commonwealth of Massachusetts, supra,* a split decision in which a three judge court found the use of military preference points invalid.[3] The Court found that the Massachusetts scheme which gave an absolute preference to veterans—all veterans who passed the exam were hired before any non-veterans were considered—unconstitutionally discriminated against women. It placed strong emphasis on the absolute nature of the preference as the major factor in its decision while suggesting that other, less absolute sorts of veterans benefits could well be constitutional. Circuit Judge Levin Campbell, concurring, said:

"Here I am of the opinion that the exclusionary impact is so total as to amount to a denial of equal protection under the fourteenth amendment. There are available to Massachusetts many other means for aiding and preferring its veterans which would not lead to a near blanket, permanent exclusion of all women from a major sector of employment."

Judge Murray dissented, stating that he believed even this total exclusion to be within the range of constitutionally permissible means of aiding veterans.

While all of the foregoing leads to the conclusion that veterans preference points as provided in the statutes before us are not invalid as discrimination against females, two recent Supreme Court decisions, *Washington v. Davis, supra,* and *Massachusetts Board of Retirement v. Murgia,* —— U.S. ——, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) resolve any doubts. In the former, the Court held that the discriminatory impact of a facially non-discriminatory employment test utilized by the District of Colum-

---

**2.** Plaintiffs have submitted the results of the 1968 sergeant's exam and an affidavit of the Director of Training of the Chicago Police Department to show that no women have achieved the rank of sergeant through promotion.

**3.** The only other court to consider a sex-discrimination challenge to the use of military preference points, *Feinerman v. Jones, supra,* found no constitutional infirmity.

bia Police Department did not establish a constitutional violation in the absence of any evidence of a discriminatory intent.

The Court recognized that some of its earlier decisions, e. g., *Palmer v. Thompson*, 403 U.S. 217, 91 S.Ct. 1940, 29 L.Ed.2d 438 (1971); *Wright v. Council of City of Emporia*, 407 U.S. 451, 92 S.Ct. 2196, 33 L.Ed.2d 51 (1972), as well as many court of appeals decisions, have held that, standing alone and without regard to discriminatory purpose, a substantial disproportionate racial impact of a statute or official practice will suffice to prove invalid racial discrimination unless it can pass the close or strict scrutiny test. In *Washington v. Davis,* however, the majority held that while invidious discriminatory purpose may be inferred from the totality of the relevant facts including the disproportionate impact of the law or practice on one race or that the discrimination is very difficult to explain on non-racial grounds, absent such an ascertainable intent the discriminatory governmental action is not unconstitutional.

While it seems likely that the question of intent will be an even thornier thicket in the area of discrimination than it is in other areas of the law,[4] there can be no question that the veterans preference points statutes were not intended to discriminate against any class of persons because of race, religion, age, sex, etc., but simply to reward those who had served in the armed forces during periods of national military need. If a racially discriminatory police test is valid unless shown to have been adopted with an intent to discriminate, the statutes before us are clearly valid. While those who never served in the armed forces, those who served at times not within the statutory periods and women who are not veterans suffer a disadvantage in hiring and promotion, this is an incidental result of a statute intended to reward veterans and not one intended to discriminate against men and women who are not veterans or those whose

service was in times of limited military action.

In *Murgia,* the Court did not apply the "strict scrutiny" test to determine that a Massachusetts statute which provided for mandatory retirement of all uniformed state police officers at age fifty did not violate the equal protection clause of the Fourteenth Amendment. Because it found that there is no fundamental right to government employment per se and that state uniformed policemen were not a suspect class in need of special protection from discriminatory legislation, it applied the rational basis test and found the statute valid. We have already found a rational basis for the veterans preference points statutes here involved.

For the reasons set forth herein, we grant the defendants' motion for summary judgment, deny the plaintiffs' motion and dismiss the complaint with prejudice and without costs.

---

4. The intent of a legislature which passed an allegedly discriminatory law or of executives or administrators who adopted an allegedly discriminatory official practice will certainly be more difficult to determine than the intent of an individual with which juries and judges customarily struggle.