148 N.J. Super. 112 (1977)
372 A.2d 333
RUTH BALLOU, APPELLANT,
v.
STATE OF NEW JERSEY, DEPARTMENT OF CIVIL SERVICE, ET AL., RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 7, 1977.
Decided March 7, 1977.
*114 Before Judges BISCHOFF, MORGAN and FURMAN.
*115 Mr. Richard Newman argued the cause for appellant (Mr. David S. Litwin, on the brief).
Mrs. Erminie L. Conley, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
Mr. John Tomasin argued the cause for amicus curiae, New Jersey Disabled American Veterans.
The opinion of the court was delivered by BISCHOFF, J.A.D.
This appeal from a final decision of the Civil Service Commission challenges the constitutionality of the absolute veterans' preference afforded by N.J.S.A. 11:27-4. The pertinent facts are as follows.
Ruth Ballou served from 1971 to 1974 as a provisional appointee in the position of Coordinator of Federal and Local Programs in the Division of Consumer Affairs. On October 1, 1974 she took a competitive examination for permanent appointment to that position and scored 99.999, the highest grade among the applicants taking the examination.
Thomas Kelly, a veteran, received a grade of 82.500. Ballou and Kelly were the two highest of the three persons certified to the position on October 1, 1974. By virtue of N.J.S.A. 11:27-4, which mandates the appointment of a veteran whenever he is among those certified, Kelly was appointed to the position on November 11, 1974.
Ballou, who had developed and directed the Consumer Affairs Local Assistance Program from its inception, wrote to the Acting Director of the Division of Consumer Affairs and objected to the appointment of Kelly, pointing to her substantially higher grade on the examination and her vast experience in the job. The Acting Director replied that, under existing law, he had no alternative but to appoint the veteran who had been certified. In order to insure the continued viability of the program that Ballou initiated, she was appointed "Confidential Agent" at the same salary she had received as a provisional appointee, and many of the *116 duties of the position were assigned to her rather than to Kelly.
Plaintiff's appeal to the Civil Service Commission was dismissed. She then appealed to this court, contending that the absolute preference afforded veterans pursuant to N.J.S.A. 11:27-4 was unconstitutional because it:
(1) is inconsistent with the grant of power contained in Art. VII, § I, par. 2 of the New Jersey Constitution and therefore invalid;
(2) violates due process in that it (a) deprives the appointing authority of discretion and (b) is arbitrary, capricious and unreasonable in that the means selected do not bear a rational relation to the legislative objective, and
(3) constitutes discrimination against women in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.
We disposed of some of the issues not now pertinent and, while retaining jurisdiction, remanded the matter to the Civil Service Commission to conduct a plenary hearing with the focus to be on a "careful examination of the true nature of the statutory veterans' preference, the detailed facts and circumstances concerning the manner in which it has operated and the effect it has upon applications for Civil Service appointments and merit appointments to classified positions under the Civil Service program."
The hearing was held and the Civil Service Commission adopted the findings and recommendations of the hearing officer's report, the concluding paragraph of which reads:
Discrimination is defined as making a difference in treatment or favor on a basis other than individual merit. In the case of the veterans' preference, all non-veterans are discriminated against, per se. However, a moderate amount of such discrimination may be tolerated in favor of a valid and positive public policy, such as veterans benefits, so long as it does not cause an unduly adverse effect on the true merit system. The absolute preference system in New Jersey discriminates excessively in this regard. The absolute and inexhaustible preference system has had a distorting, depressing and adverse effect on Civil Service appointments and the merit system of appointments to classified positions under the Civil Service program.
*117 The record is now before us for further consideration.
At the opening of the hearing both parties stipulated that the "Veterans' Preference Impact Study June, 1975" was an official document and it was admitted as a joint exhibit.
This study, conducted by the Division of Personnel Management and Employee Development, New Jersey Department of Civil Service, to consider the effect of the veterans' preference upon the open competitive examination process, compared the experience of veterans and nonveterans, with the veterans class being further divided for some purposes into a separate subclass of disabled veterans. The conclusions drawn in the study are:
1. While highly competitive on the basis of their examination scores, veterans still receive a large list placement advantage which increases their prospects for appointment.
2. The substantial veteran list placement advantage resulted in significant veteran appointment gains. These gains could have been even greater had the veterans accepted those appointments to which they were legally entitled under the absolute provisions of the present law.
3. The present system of veterans' preference restricts the free selection of qualified personnel for state service. The restrictive effect varies within the several EEOC job categories.
Additional studies admitted into evidence and the testimony of witnesses furnished further evidential support for the conclusions adopted by the Civil Service Commission, quoted above.
The veterans' preference under attack here finds its source in N.J.S.A. 11:27-4:
The Civil Service Commission shall certify to the appointing authority the names and addresses of the three candidates willing to accept employment standing highest upon the register for each position to be filled, and such appointing authority shall select one of the three so certified; provided, however, that whenever the name or names of a veteran or veterans shall be among those certified to the appointing authority the choice of the appointing authority shall be limited to the veteran or veterans whose name or names are included in such certification; whenever the names of two or more veterans shall be amongst those certified to the appointing authority, the appointing *118 authority shall appoint the veteran whose standing is the highest on the register for the position to be filled. [Emphasis in original]
When an open competitive examination is given for Civil Service classified positions, a list is prepared containing the names of all eligibles who passed the examination. The names on the list appear in the following order:
(1) eligibles entitled to disability veterans' preference in the order of their final scores (N.J.S.A. 11:27-3);
(2) eligibles entitled to veterans' preference in the order of their final scores (N.J.S.A. 11:27-4); and, then,
(3) nonveteran eligibles in the order of their final scores.
The veteran, therefore, is floated to the top of the list so long as he passes the examination, regardless of the difference between his score and the score of a passing nonveteran.
In all cases where the appointing authority receives a certification from the lists of the eligibles following an open competitive examination, he must first appoint disabled veterans and veterans "in their order." N.J.A.C. 4:1-12.15.
The veterans' preference in New Jersey at the entry level is inexhaustible. The veteran may use it for any number of examinations, for any number of positions, as many times as he likes, and for an unlimited period of time.[1]
The Department of Civil Service administers and operates both the Civil Service Law and the veterans' preference laws, and is required to do so in accordance with the mandates of the statute. N.J.S.A. 11:1-7. The procedure followed by the Civil Service Commission in the case of Ruth Ballou conformed to the statutory mandate. Plaintiff does not contend otherwise. It follows that unless the statutory procedure is unconstitutional by federal or state standards, the action of the Civil Service Commission must be affirmed.
*119 We note in this connection that while the evidence produced at the hearing did not disapprove of the principle of preference for veterans, the existing statutory method was condemned as adversely affecting the free selection of qualified personnel for state service. Various alternatives were suggested which, it was argued, would accomplish the same objectives without the harmful effects of the present system. However, these arguments and the suggested alternatives are more appropriately addressed to the Legislature. If the legislative scheme is not constitutionally infirm, the existence of other methods of dealing with the problem can in no way affect our conclusion.

I

The Alleged Violation of Art. VII, § I, par. 2 of the New Jersey Constitution

Plaintiff contends that the statutory veterans' preference violates that provision of the New Jersey Constitution providing:
Appointments and promotions in the civil service of the State, and of such political subdivisions as may be provided by law, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination, which, as far as practicable, shall be competitive; except that preference in appointments by reason of active service in any branch of the military or naval forces of the United States in time of war may be provided by law. [N.J. Const. (1947), Art. VII, § I, par 2]
The argument is two-pronged: first, that the absolute preference denies the appointing authority of all discretion; and, second, that it was the intent of the people, in adopting this constitutional provision, to establish a merit system for appointments within the classified Civil Service, with an exception providing for appropriate and reasonable preferences for veterans. Plaintiff's characterization of the present system as a veterans' preference system with exceptions allowing *120 merit appointments to surface from time to time is, to a certain extent, accurate.
Reference to history discloses that the merit system for appointment of employees to classified positions was adopted by the State of New Jersey in 1908. That same Legislature required that preference be given to veterans seeking appointments in state service. The preference then provided took two forms: (1) if a nonveteran was appointed when a veteran was eligible and available, the appointing authority had to certify as to the reasons for the nonappointment of the veteran; and (2) there was an absolute preference granted Civil War veterans who passed competitive examinations.
After World War I the statute providing for veterans' preference was amended in 1920 to apply to veterans who had been in the military service in any war, and the preference was implemented by adding points to test results scored by veterans in competitive examinations. The number of points awarded depended upon the nature and length of military service.
Various amendments to these laws enacted in subsequent years did not affect the basic scheme.
The basic law of veterans' preference, as it operates today, became effective with the enactment of L. 1946, c. 227, (now substantially N.J.S.A. 11:27-1 et seq.).
The voters of this State at a general election on November 4, 1947 adopted our present Constitution containing Art. VII, § I, par. 2, previously quoted.
Coming so close to the end of World War II, when millions of men had served in the military forces, it is reasonable to presume an intent on the part of the voters adopting the Constitution to confer a benefit on the veterans, grant a preference to employment in classified positions in state employment and, impliedly at least, approve the veterans' preference plan then in existence.
We see no basis for our inferring any intent on the part of the voters who approved the Constitution to erode or diminish the benefits conferred on veterans the preceding year.
*121 The veterans' preference law, as it now exists in N.J.S.A. 11:27-1 et seq., is not inconsistent with, nor in violation of, Art. VII, § 1, par. 2 of the New Jersey Constitution. That constitutional provision, when adopted, did no more than give an organic basis to the veterans' preference laws then in effect.

II

The Due Process Argument
Plaintiff contends that the awarding of an absolute, inexhaustible preference to veterans in appointments to positions in the classified Civil Service violates due process of the law under the United States Constitution.
The lawmaking authority of the legislature must be exercised in conformity with the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the implied guarantee of due process which reposes in Art. I, par. 1 of our State Constitution. Hutton Park Gardens v. West Orange Town Council, 68 N.J. 543, 560 (1975).
Due process under both Constitutions requires that "a law shall not be unreasonable, arbitrary or capricious and that the means selected shall bear a rational relationship to the legislative objective sought to be obtained." Robson v. Rodriquez, 26 N.J. 517, 522 (1958).
Appellant recognizes these principles and does not contend that the "principle of favoring veterans for appointment is so irrational as not to satisfy the minimal demands of equal protection or due process." Rather, it is contended that this concept has been implemented in such a gross and arbitrary manner so as to violate due process of law.
It is clear that one advancing such an argument has a heavy burden of demonstrating that the Legislature has acted in a palpably unreasonable or unduly discriminatory manner, or otherwise invaded basic constitutional freedoms. Legislatures are presumed to have acted constitutionally. *122 Schilb v. Kuebel, 404 U.S. 357, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971); Hutton Park Gardens v. West Orange Town Council, supra, 68 N.J. at 564; Jamouneau v. Harner, 16 N.J. 500 (1954), cert. den. 349 U.S. 904, 75 S.Ct. 580, 99 L.Ed. 1241 (1955).
Veterans' preference laws have a long tradition of acceptance in this country. They exist in the Federal Government and in virtually every state and have consistently been upheld on various grounds. White v. Gates, 102 U.S. App. D.C. 346, 253 F.2d 868 (1958), cert. den. 356 U.S. 973, 78 S.Ct. 1136, 2 L.Ed.2d 1147 (1958); Feinerman v. Jones, 356 F. Supp. 252 (D. Pa. 1973); Koelfgen v. Jackson, 355 F. Supp. 243 (D. Minn. 1972), aff'd mem. 410 U.S. 976, 93 S.Ct. 1502, 36 L.Ed.2d 173 (1973); Gianatasio v. Kaplan, 142 Misc. 611 255 N.Y.S. 102 (Sup. Ct.), aff'd 257 N.Y. 531, 178 N.E. 782 (Ct. App. 1931), app. dism. for want of substantial federal question, 284 U.S. 595, 52 S.Ct. 203, 76 L.Ed. 512 (1932); cf. Johnson v. Robison, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974); Fredrick v. United States, 507 F.2d 1264, 205 Ct. Cl. 791 (1974).
It is clear that a statute awarding benefits on the basis of veterans' status does not involve a suspect class. Branch v. DuBois, 418 F. Supp. 1128 (N.D. Ill. 1976); Rios v. Dillman, 499 F.2d 329 (5 Cir.1974); Feinerman v. Jones, supra; Koelfgen v. Jackson, supra.
In Koelfgen v. Jackson, supra, a broad attack was leveled against a Minnesota statute granting absolute preference to veterans on an initial appointment and granting points on promotional examinations. The court summarized the historical reasons for veterans' preference as follows:
1. The State owes a debt of gratitude to those veterans who served the nation in time of peril.
2. A veteran is likely to possess courage, constancy, habits of obedience and fidelity which are valuable qualifications for any public office holder.
*123 3. Veterans should be aided in rehabilitation and relocation because military service has disrupted their normal life and employment. [355 F. Supp. at 251; citations omitted]
What the court then said is applicable here:
While this Court may not believe that these are good reasons for granting preference to veterans, by the same token, in the absence of proof, it cannot say that the legislature had no rational basis for concluding that such reasons justified preferring veterans in appointment to civil service. [at 251]
The court thereafter held that the veterans' preference provided by the statutes of Minnesota was constitutionally sound. That decision was affirmed by the Supreme Court on memorandum, 410 U.S. 976, 93 S.Ct. 1502, 36 L.Ed.2d 173.
The authorities cited by plaintiff in support of her argument that this New Jersey statute denies her due process are unpersuasive. Plaintiff places strong reliance on the case of Anthony v. Massachusetts, 415 F. Supp. 485 (D. Mass. 1976), app. docketed No. 76-265, sub nom. Massachusetts v. Feeney, 429 U.S. 66, 97 S.Ct. 345, 50 L.Ed.2d 224 where the court declared a Massachusetts veterans' preference statute unconstitutional. This case stands alone on that issue[2]; the decision there clearly rested upon a finding of a "near blanket permanent exclusion of all women from a major sector of employment" (concurring opinion of Campbell, J. 415 F. Supp. at 501). Thus, the factual underpinning of that case is absent here. (See Point III infra.)
We hold that the veterans' preference statutes of our State are neither arbitrary, capricious nor unreasonable and that they bear a rational relationship to the legitimate objective of providing a preference for veterans. We need go no further.
*124 The fact that legislators of a majority of states have adopted veterans' preference statutes which do not provide the absolute preference provided by our New Jersey statute or have a legislative scheme less drastic in its impact on the nonveteran is neither material nor relevant.

III

The Equal Protection Argument
Plaintiff further contends that "the veterans' preference provisions of the Civil Service Act are unconstitutional because they have the effect of discriminating against women and there is no adequate justification for such effect."
In support of this contention plaintiff argues that the veterans' preference law has a discriminatory impact on women which renders it unconstitutional. This argument is based upon the undisputed fact that for many years close to 98% of the United States armed forces personnel have been men; therefore, the argument continues, the veterans' preference law perpetuates a pre-existing discrimination against women, since the ratio of at least 50 to 1 against women in the armed forces raises a compelling inference of discrimination. In support of this argument plaintiff cites the case of Anthony v. Massachusetts, supra. (Many of the facts argued in support of this point do not appear in the record but do appear in that opinion.)
Plaintiff's argument on the issue is severely undercut by the following factual finding of the Civil Service Commission:
Although women constitute a large integral group within the total population of non-veterans, there was not sufficient evidence to prove that women are discriminated against by the veterans' preference to any substantially greater degree than are all non-veterans. The system works to the disadvantage of all non-veterans, including women, who happen to be a very predominant group of non-veterans.
At oral argument plaintiff conceded that there was substantial evidence on the record to support this finding and, *125 in light of the scope of our review, Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 92 (1973), this issue could be decided against plaintiff for that reason alone. Her rights to relief must rest upon her membership in the "non veteran" group and not on a sub-classification of "women."
The equal protection argument is invalid for still another reason. The veterans' preference laws do not make any distinction based upon sex. They are facially neutral. Branch v. DuBois, supra. While it is undoubtedly true, as plaintiff argues, that such laws have a disproportionate effect on women, that fact alone does not constitute a denial of equal protection. If a law, neutral on its face, may rationally be said to serve a purpose which the State is constitutionally empowered to pursue, equal protection has not been denied, even though its impact may adversely affect one gender more than another. Cf. Washington v. Davis, 426 U.S. 229, 245, 96 S.Ct. 2040, 2050, 48 L.Ed.2d 597, 611 (1976). A disproportionate impact on one class is not enough to invoke the court's strict scrutiny where a discriminatory purpose is not claimed. 426 U.S. at 248, 96 S.Ct. at 2051, 48 L.Ed.2d at 612.
The Supreme Court of the United States has recently stated that "proof of a racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." Village of Arlington Heights v. Metropolitan Housing Development Corp., ___ U.S. ___, ___, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977). More than a disproportionate impact on a race or sex is required to invalidate a facially neutral enactment on equal protection grounds.
This principle has been applied in a broad range of cases. E.g., Village of Arlington Heights v. Metropolitan Housing Development Corp., supra (a zoning enactment with a resulting disproportionate impact on a minority race); General Electric v. Gilbert, 428 U.S. 125, 136, 97 S.Ct. 401, 408, 50 L.Ed.2d 343, 354 (1976) (health insurance *126 benefits provided by employer excluding coverage for pregnancy); Washington v. Davis, supra (qualifying examinations for positions on a police force which had an adverse effect on racial minorities); Keyes v. School District No. 1, 413 U.S. 189, 208, 93 S.Ct. 2686, 37 L.Ed.2d 548 (1973) (schools); Wright v. Rockefeller, 376 U.S. 52, 56-57, 84 S.Ct. 603, 11 L.Ed. 2d 512 (1964) (election districting); Akins v. Texas, 325 U.S. 398, 403-404, 65 S.Ct. 1276, 89 L.Ed. 1692 (1945) (jury selection).
Although a statute, facially neutral, must not be applied so as to invidiously discriminate on an impermissible basis, Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed.2d 220 (1886); Washington v. Davis, supra, 426 U.S. at 241, 96 S.Ct. at 2049, 48 L.Ed.2d at 608, there is no contention here that the veterans' preference statute is being applied in that fashion or that the statute is a purposeful device to discriminate against women, and we discern no such improper practice, purpose or intent. Washington v. Davis, supra, 426 U.S. at 245, 96 S.Ct. at 2050, 48 L.Ed.2d at 611; cf. Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973).
Application of the foregoing principles to the veterans' preference laws here involved leads to the conclusion that they do not discriminate against women and do not constitute deprivation of equal protection of the law.
We accordingly hold that the veterans' preference laws contained in N.J.S.A. 11:27-1 et seq. meet the test of validity under both the New Jersey and the United States Constitutions. There being no contention that the laws were improperly applied, it follows that Ruth Ballou was properly denied the appointment to the position which she sought, and the decision of the Civil Service Commission dismissing her appeal is affirmed.
NOTES
[1] It does not apply to promotions. N.J.S.A. 11:27-6. See also Scarillo v. Civil Service Department, 146 N.J. Super. 127, 369 A.2d 26 (App. Div. 1977).
[2] The case of Hutcheson v. Director of Civil Service, 281 N.E.2d 53 (Mass. Sup. Jud. Ct. 1972), declaring a statute giving a disabled veteran an absolute preference over a nondisabled veteran unconstitutional, was decided on state constitutional grounds.